[No. D009807. Fourth Dist., Div. One. Jan. 24, 1990.]

ED COBLER, Plaintiff and Respondent, v.
STANLEY, BARBER, SOUTHARD, BROWN & ASSOCIATES,
Defendant and Appellant.

520

## COUNSEL

Alford & MacLeod and Daniel B. MacLeod for Defendant and Appellant.

Charles D. Richmond for Plaintiff and Respondent.

## OPINION

**HUFFMAN, J.**—Stanley, Barber, Southard, Brown & Associates (Stanley Barber), a professional career consulting agency, appeals a judgment confirming an arbitration award in favor of Ed Cobler, its former client. The judgment also awarded costs payable by Stanley Barber to the American Arbitration Association (the AAA). Stanley Barber contends the judgment should be reversed because of apparent bias on the part of the arbitrator, because the award exceeds the jurisdiction conferred on the arbitrator by the agreement of the parties, and because there was no basis for an award of costs to the AAA. We find only one of these contentions, excess of jurisdiction, to be meritorious to some extent. We thus affirm in part and reverse in part with directions, as will be explained *infra*.

### FACTUAL AND PROCEDURAL BACKGROUND

■ Under well-accepted principles concerning judicial confirmation or rejection of arbitration awards, neither this court nor the trial court may review the merits of the dispute that was submitted to arbitration. (*Johnston v. Security Ins. Co.* (1970) 6 Cal.App.3d 839, 842 [86 Cal.Rptr. 133].) Nor does either court consider the sufficiency of the evidence to support the award. (*Ibid.*) In light of these rules, we set forth a brief statement of the facts as drawn from the pleadings and the arbitration award, and we do not consider the material filed with this court that was not before the trial court (i.e., the arbitration briefs). Similarly, we disregard Cobler's attorney's

declaration filed de novo with this court without an augmentation or other order authorizing the same.

Cobler was a resident of Colorado when he saw an advertisement for Stanley Barber's consulting services in a Denver newspaper. Desiring to move to San Diego, Cobler flew to this city in April 1987 and met twice with a Stanley Barber representative about help in finding a new job. The representative told him Stanley Barber would obtain job interviews and three job offers for him within ninety days. Cobler signed Stanley Barber's form contract which contained an arbitration clause and paid a total of $1,400 fees. In return, he came to San Diego three times to work with Stanley Barber representatives on his job search. During his third visit, for which he allotted a week, he met with a representative with whom he had not previously worked. That representative spent three hours with him and then handed him a telephone book and told him to set up his own interviews. Cobler tried this approach unsuccessfully and then returned to the Stanley Barber office, where he found that his representative was leaving town for a week due to a family emergency. Cobler talked to other Stanley Barber personnel, one of whom told him he was sorry he had gotten Cobler involved with the firm, and one of whom (Mr. Coughlin, the office supervisor, president, and sole shareholder of Stanley Barber's parent corporation, Dalbex, Inc.), set up an alternative meeting for him with still another representative. Cobler returned to Colorado, which the arbitrator found was reasonable under the circumstances.

Stanley Barber's requests to Cobler to pay the $1,450 balance due under the contract were unsuccessful. Through its agent, Mr. Coughlin, Stanley Barber then filed with the AAA its demand for arbitration on February 2, 1988, listing the dispute as "nonpayment of balance due," seeking $1,450 plus arbitration costs. This demand was amended a month later to add as part of the submission to arbitration that the dispute now included Cobler's "continual verbal and written allegations and threats," which had allegedly been going on since May 1987.

In response Cobler filed a counterdemand for arbitration stating the nature of the dispute as breach of contract and seeking $2,496.13 plus $300 arbitration fees. Several months later he retained an attorney who sent the local AAA administrator a letter amending the counterdemand to add a claim for $75,000 in punitive damages on unspecified grounds.

The AAA sent the parties a list of five nominations for arbitrators. The parties' first choice, James E. King, a partner in the law firm of Luce, Forward, Hamilton and Scripps and identified as such in the AAA

materials submitted to the parties, was appointed in March 1988. Three separate arbitration sessions were held in August and September 1988 and the arbitrator requested supplemental briefing from the parties after the close of the hearing. The arbitrator reviewed Stanley Barber's sales training tapes, along with the other evidence presented, and rendered an award denying Stanley Barber's claim and granting Cobler's claim in the amount of $9,852.86.[1] In the award, the arbitrator explained he found Stanley Barber was negligent and breached its contract with Cobler; however, no findings were made on Cobler's claim that he had been defrauded, as it was the arbitrator's view the damages awarded for negligence and breach of contract would serve to deter Stanley Barber from treating other clients the way it treated Cobler. The award also required Stanley Barber to reimburse Cobler for $332.92 fees paid to AAA and to pay the AAA $750 for the arbitrator's compensation.

Cobler filed his petition in the superior court to confirm this arbitration award. (Code Civ. Proc., § 1285.)[2] Stanley Barber responded with its petition to vacate the award on the statutory grounds of corruption (bias) of the arbitrator, excess of jurisdiction in the issues resolved and the amount awarded, and error of law on the face of the decision. (§§ 1285, 1286.2 (a), (d), (e).) In support of its claims of bias, Stanley Barber filed Mr. Coughlin's declaration stating he did not know until after the arbitration award was rendered and until he consulted legal counsel that the arbitrator, Mr. King, was a law partner of an attorney, Scott Sonne, who represented one of Stanley Barber's major competitors (Crocker Associates) in a lawsuit which Stanley Barber had filed against it charging unfair trade practices.[3] Coughlin claimed he would not have accepted King as an arbitrator if he had known of this potential conflict of interest. Stanley Barber also stated in its points and authorities that Scott Sonne (King's partner) had deposed Coughlin for five days, in the course of which he impliedly questioned Coughlin's credibility. These circumstances were alleged to have made King's neutrality as an arbitrator suspect.

Cobler obtained an order of the superior court allowing him to contact the arbitrator to obtain documents and a declaration on the newly raised

---

[1] The arbitrator broke down the award into the following components: "1. Refund of all monies paid under contract: $1,400.00; [¶] 2. Mileage incurred in the May 17-May 24 trip: 2544 miles at .25¢ per mile: $636.00; [¶] 3. Lodging during May 17-May 24 trip: $216.86; [¶] 4. Compensation for 5 working days spent during May 17-May 24 trip: $500.00; [¶] 5. Emotional distress incurred as a result of conduct by Stanley Barber: $7,500.00. [¶] 6. Offset for value received: -$400.00. [¶] Accordingly, the total compensation due Mr. Cobler is $9,852.86." (Fn. omitted; it explains the evidentiary basis for the award of damages for emotional distress.)

[2] All statutory references are to the Code of Civil Procedure unless otherwise specified. When referring to statutory subparts we omit repetition of the word "subdivision."

[3] According to Stanley Barber's reply brief, this related action was settled and dismissed during the pendency of this appeal.

bias issue. Acting as his own attorney and with the permission of the AAA, the arbitrator filed a motion for sanctions and attorney's fees against whichever party the court should deem appropriate. (§ 128.5.) He supported the motion with his declaration stating he was unaware until after the award was rendered of any potential conflict of interest because the conflicts check he had performed did not reveal any connection between his law firm and any other litigation involving Stanley Barber. This was due to the fact that the litigation involving Crocker Associates was carried on by Stanley Barber under its parent corporation's name, Dalbex, Inc. The arbitrator also stated his financial status was unaffected by any arbitration decisions he had awarded, and suggested that Stanley Barber had knowingly selected him as an arbitrator (and another attorney involved in the Crocker Associates case as second choice) in view of his law firm affiliation in order to have potential grounds for challenging the arbitration award if it should prove unfavorable. He attached to his declaration copies of the AAA documents used in the selection of the arbitrator, listing King's law firm as part of his biography which the parties used in making their selection; the same documents were included with Cobler's supplemental opposition papers. He also attached pages from the reporter's transcript of Coughlin's deposition which showed Scott Sonne's identity as a Luce, Forward, Hamilton & Scripps attorney. Finally, the arbitrator's declaration defended the award as within the scope of the issues submitted by the parties in their briefs and arguments.

The cross-petitions to confirm the award and to vacate it, fully opposed, were heard February 23, 1989. The trial court confirmed the award, stating that on the papers before it, there was no real conflict of interest, "and so we're just dealing with appearances." The court agreed with the arbitrator there was a possibility the claim of bias was a "set-up" to challenge the award, but refused to award any fees directly to the arbitrator. However, the court awarded $750 costs to the AAA on the basis it should be compensated for the expense and trouble occasioned by the dispute. No excess of jurisdiction in the award was found on the basis the parties had agreed to expand the issues presented in the pleadings (e.g., to include infliction of emotional distress), as shown by their briefing and participation in the arbitration on all issues ultimately decided by the award.

The judgment thus confirmed the $9,852.86 award in favor of Cobler along with arbitration fees and court costs, and required Stanley Barber to pay $750 additional costs to the AAA for participation in the arbitration. The judgment also stated the court found the arbitrator was neutral and that Stanley Barber had waived its right to challenge his neutrality by its untimely claims and was estopped from now doing so due to prejudice to

Cobler. In conclusion, the court found: "[S]ufficient, and timely notice was given to all parties to this matter as to the issues to be considered by the arbitrator, and therefore the arbitrator had jurisdiction to consider and award damages for negligent infliction of emotional distress."

Stanley Barber timely appealed the judgment.

## DISCUSSION

■ Our standard of review was well stated in *Atlas Floor Covering* v. *Crescent House & Garden, Inc.* (1958) 166 Cal.App.2d 211, 215 [333 P.2d 194]: "In connection with the review of arbitration awards, 'it is well settled that both before the superior and appellate courts every intendment of validity must be given the award and that the burden is upon the one claiming error to support his contention.' [Citation.]"

■ Although the courts do not review the merits of the controversy that was arbitrated, the sufficiency of the evidence before the arbitrator, or the validity of the arbitrator's reasoning (*Johnston* v. *Security Ins. Co., supra,* 6 Cal.App.3d 839, 842; *Ray Wilson Co.* v. *Anaheim Memorial Hospital Assn.* (1985) 166 Cal.App.3d 1081, 1091 [213 Cal.Rptr. 62]), the courts nevertheless maintain some control over the legal correctness of an arbitration award. In *Ray Wilson Co., supra,* the court explained: "Under certain circumstances an award based on an error in law may be set aside on the ground that it was in excess of the arbitrator's powers. (Code Civ. Proc., § 1286.2, subd. (d);[4] *Abbott* v. *California State Auto. Assn.* (1977) 68 Cal.App.3d 763, 770 [137 Cal.Rptr. 580].) A trial court, however, is limited in its authority to vacate the award of an arbitrator, even in the event of an error of fact or law. The mere fact that an arbitrator reached an erroneous conclusion based on an error of law which does not appear on the face of the record will not invalidate the award; on the other hand, where the error appears on the face of the award and causes substantial injustice the award may be vacated. [Citations.]" (*Id.* at p. 1090.)

With these rules in mind, we address Stanley Barber's two major grounds of claimed invalidity of the award and judgment: bias and/or lack of neutrality on the part of the arbitrator, and excess of jurisdiction in the award made. Finally, we address the issue of the award of costs to the AAA.

---

[4] Section 1286.2 (d) provides the trial court shall vacate the award upon a determination that: "The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted . . . ."

# I

## Arbitrator's Impartiality

Stanley Barber makes two related contentions in attacking the award and judgment as tainted by the arbitrator's alleged bias: The arbitrator was bound under AAA rules and by case law standards to disqualify himself due to his law partner's involvement in litigation adverse to Stanley Barber's interests, and the trial court erred in light of the language of Evidence Code section 703.5 by considering the arbitrator's declaration about the events which took place. We discuss these in turn.

■ California courts have adopted the federal standard for vacation of an arbitration award under section 1286.2 as stated in the leading case of *Commonwealth Coatings Corp.* v. *Continental Cas. Co.* (1968) 393 U.S. 145 [21 L.Ed.2d 301, 89 S.Ct. 337]. (*Johnston* v. *Security Ins. Co., supra,* 6 Cal.App.3d 839, 841-843; *Wheeler* v. *St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 371 [133 Cal.Rptr. 775, 84 A.L.R.3d 343].) This standard provides that an arbitrator's failure to disclose to the parties any dealings which might create an impression of possible bias is grounds for vacating the award. (*Ibid.*) AAA Commercial Arbitration Rules, rule 19, which applied to this proceeding, is similar: "Disclosure and Challenge Procedure: A person appointed as neutral arbitrator shall disclose to the AAA any circumstances likely to affect impartiality, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their counsel. Upon receipt of such information from the arbitrator or another source, the AAA shall communicate the information to the parties, and, if it deems it appropriate to do so, to the arbitrator and others. Thereafter, the AAA shall determine whether the arbitrator should be disqualified and shall inform the parties of its decision, which shall be conclusive."

■ Stanley Barber contends it was prejudiced by King's nondisclosure of his partnership relation with the attorney defending Stanley Barber's adversary in the unfair trade practices suit. We apply several established standards to evaluate this claim. First, this court noted in *Figi* v. *New Hampshire Ins. Co.* (1980) 108 Cal.App.3d 772, 775-776 [166 Cal.Rptr. 774] that whether a particular business relationship between an arbitrator and a party or party's representative requires disclosure is a factual question to be decided by the trier of fact in each case. In *Gonzales* v. *Interinsurance Exchange* (1978) 84 Cal.App.3d 58, 66 [148 Cal.Rptr. 282], the court applied a reasonableness standard to the "possible bias" rule set forth in *Commonwealth Coatings Corp., supra,* 393 U.S. 145, 150 [21 L.Ed.2d 301,

305], on the basis that the policy of the law in favor of the finality of arbitration required as much.

Therefore, it was within the trial judge's province to evaluate the respective showings made on the bias issue. Of course, the court was bound by applicable law, such as Evidence Code section 703.5, which provides: "No person presiding at any judicial or quasi-judicial proceeding, and no arbitrator, shall be competent to testify, in any subsequent civil proceeding, as to any statement, conduct, decision or ruling, occurring at or in conjunction with the prior proceeding, except as to a statement or conduct that could (a) give rise to civil or criminal contempt, (b) constitute a crime, (c) be the subject of investigation by the State Bar or Commission on Judicial Performance, or (d) give rise to disqualification proceedings under subdivision (5) of Section 170 of the Code of Civil Procedure."[5]

Before this section was enacted, several cases dealt with the extent to which arbitrators' declarations could be considered by trial courts in proceedings to confirm or vacate awards. In *Arco Alaska, Inc.* v. *Superior Court* (1985) 168 Cal.App.3d 139, 147-148 [214 Cal.Rptr. 51], this court summarized the rules as follows: "While arbitrator declarations may be received where the record does not disclose issues submitted for decision and the materials considered by the arbitrators [citation] and when a dissenting arbitrator charges improprieties in the arbitration [citation] and where others charge bias, partiality or improper conduct [citation], the merits of a controversy between the parties are not subject to judicial review. [Citations.] Arbitrators are not required to explain their awards or provide reasons for their conclusions. [Citation.]"

The enactment and amendment of Evidence Code section 703.5 presumably restricted these rules further, except as to the four items expressly stated to be exceptions to the rule of incompetency to testify; here, the fourth such exception is clearly applicable. ■■ ■■■ Although the section cited within Evidence Code section 703.5 for disqualification procedures expressly applies only to judges (former § 170(5); see fn. 5, *ante*), compelling reasons of public policy favoring neutrality of arbitrators

---

[5] The portion of the statute adding arbitrators and their decisions to the matter covered by this statute was added by 1988 amendment to this 1979 statute. Since the hearing before the trial court took place in February 1989, the amended version of the statute applied to the trial court's evaluation of the arbitrator's declaration, even though the arbitration took place in 1988.

Since the 1979 enactment and 1980 original amendment of this section, the cited section 170(5) has been reenacted into current sections 170.1 and 170.3, dealing with disqualification for cause procedures applicable to trial judges.

indicate the same exception should apply to nonjudicial dispute resolution, such as arbitration.[6] Thus, while the trial court should not have considered the portions of the arbitrator's declaration purporting to explain the reasons for his decision or the merits of the controversy as he saw it (*Arco Alaska, Inc.* v. *Superior Court, supra,* 168 Cal.App.3d at pp. 147-148), the trial court had the power to consider those statements in the declaration which went to the qualifications of the arbitrator to act; i.e., his bias or lack thereof.[7]

To evaluate the claims of bias, the trial court correctly analyzed the contention in light of the circumstances in which it was made. That is, it looked to Coughlin's declaration stating he did not know at the time of the arbitration of King's professional relationship with the attorney opposing Stanley Barber in the unfair trade practices lawsuit. It also looked to Stanley Barber's statement in its points and authorities that Coughlin had been deposed by King's partner in the other action before the arbitration took place, to the AAA documents which showed King's law firm was listed in his biography which the parties used to select him as arbitrator, and to King's declaration stating he was unaware until after the decision was made of any potential conflict of interest on his part.

From all of these factors, the trial court concluded as a factual matter that there was no actual bias, and that Stanley Barber waived any "apparent bias" claim and was estopped from late assertion of the same. There is adequate support in the record for this conclusion and we do not find the arguments asserted by Stanley Barber to be convincing for the reasons explained above. The trial court did not err in this respect.

[6] The Supreme Court's statement in *Kaufman* v. *Court of Appeal* (1982) 31 Cal.3d 933, 939 [184 Cal.Rptr. 302, 647 P.2d 1081] that former section 170 "affected trial judging only" was made with reference to the dispute before that court involving an appellate justice; hence, that statement does not dispose of the issue of the applicability of bias and disqualification standards to arbitrators. An opinion is not authority for a proposition not considered therein. (*Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].)
[7] Stanley Barber complains the postarbitration actions of the arbitrator (i.e., in filing the motion for sanctions and arguing at the hearing on the cross-petitions) showed bias. However, the pertinent time for any inquiry into bias is before the arbitration decision was rendered. We think the arbitrator overexuberant in rising to such vigorous defense of the merits of his own decision in response to allegations of bias. We believe an arbitrator, like a trial judge, should rely on the decision itself if any challenge is made. However unseemly the arbitrator's vigorous postdecision advocacy may have been, it does not demonstrate any bias or prejudice on his part in reaching a decision in this case. As we have discussed above, the arbitrator was entitled to answer the allegations of bias under Evidence Code section 703.5.

## II

### Excess of Jurisdiction

 Stanley Barber next contends the arbitrator had no jurisdiction to award tort damages for emotional distress or any damages in excess of the contract damages pled in the demands for arbitration, which were stated by Stanley Barber to be $1,450 plus costs and by Cobler to be $2,496.13 plus fees and costs. Stanley Barber goes on to argue the $75,000 punitive damages sought by Cobler in his letter request to amend the demand was unsupported by the pleadings of what was basically a breach of contract case. (Civ. Code, § 3294(a).) Thus, it claims the award must be vacated as in excess of the issues and requests for relief submitted by the parties.

Our point of departure in analyzing these claims is the arbitration clause in the contract. It provides: "Should there be a dispute arising from this Agreement, it is mutually agreed that it shall be promptly settled through binding arbitration in accordance with the rules of the [AAA]."

This type of arbitration clause is generally considered to be more limited in scope than would be, for example, a clause agreeing to arbitrate " 'any controversy . . . arising out of *or relating to* this agreement,' " which might thus cover misconduct arising out of the agreement as well as contractual issues. (See *Mansdorf* v. *California Physicians' Service, Inc.* (1978) 87 Cal.App.3d 412, 417 [151 Cal.Rptr. 388].)

We examine Stanley Barber's claim the arbitrator decided issues and awarded damages beyond the scope of the submission to arbitration in light of several settled rules. It is well accepted " '[t]he powers of an arbitrator are limited and circumscribed by the agreement or stipulation of submission.' " (*Delta Lines, Inc.* v. *International Brotherhood of Teamsters* (1977) 66 Cal.App.3d 960, 966 [136 Cal.Rptr. 345].) An arbitration award which purports to decide unsubmitted issues is required to be vacated by the terms of section 1286.2(d) as in excess of the arbitrator's powers. (*Ibid.*) It is not proper for an arbitrator to create and decide a new cause of action which gives rise to new and distinct damages. (*Atlas Floor Covering* v. *Crescent House & Garden, Inc., supra,* 166 Cal.App.2d 211, 219.) Moreover, it is also well accepted that an award may be good in part and bad in part, "where there has been an excess of power in the arbitrators by their attempting to determine matters not submitted. . . ." (*Muldrow* v. *Norris* (1859) 12 Cal. 331, 344, disapproved on other grounds in *Sapp* v. *Barenfeld* (1949) 34 Cal.2d 515, 522-523 [212 P.2d 233].)

As we have already described, the pleadings (the demands and cross-demands for arbitration) originally raised only contract issues. Stanley Barber added a claim that Cobler had made allegations and threats, and Cobler added a demand for $75,000 punitive damages to his contract claim. Apparently the arbitration briefs and oral arguments purported to submit Cobler's theories of fraud and emotional distress as well; however, the arbitrator expressly made no decision on the fraud issues. We thus must determine whether the damages awarded (see fn. 1, *ante*), which included compensatory damages for Cobler's expenses in pursuing the consulting services and also $7,500 for emotional distress, were within the scope of the matters submitted. The arbitrator's findings included that Stanley Barber had breached an unspecified duty of care to Cobler and had also breached its contract. Apparently, the arbitrator treated the matter as a professional negligence or malpractice matter, although we are unaware of any authority which extends malpractice doctrines to a professional career consulting agency.

■■■ Generally speaking, damages for emotional distress do not arise from a breach of contract. (*Sawyer* v. *Bank of America* (1978) 83 Cal.App.3d 135, 139 [145 Cal.Rptr. 623]; *Allen* v. *Jones* (1980) 104 Cal.App.3d 207, 211 [163 Cal.Rptr. 445].) Exceptions to this rule include specialized situations involving the vital concerns of an individual, where breach of a contract will foreseeably result in severe mental distress (e.g., a mortuary's handling of a dead body, or repair of heirloom jewelry). (*Allen* v. *Jones, supra*, 104 Cal.App.3d at p. 211; *Windeler* v. *Scheers Jewelers* (1970) 8 Cal.App.3d 844, 851 [88 Cal.Rptr. 39].) We do not believe a service contract for professional career consultation, such as we consider here, qualifies as an exception to the general rule.

■■■ Therefore, the only basis for the emotional distress damages award must have been in any tort issues properly submitted to the arbitrator. Stanley Barber's submission of its claim that Cobler made certain threats to it does not support an award of emotional distress damages against it; Cobler's punitive damages claim, apparently based on fraud, is not enough to support emotional distress damages since the arbitrator expressly stated he was not ruling upon the fraud issues.[8] Can we deem the negligence

---

[8] Stanley Barber contends the arbitrator's statement in the award that the damages awarded on the negligence and breach of contract theories "should itself be a sufficient deterrent in this instance to force Stanley Barber [to] have clearer understandings with its clients and to treat the clients better than it treated Mr. Cobler" shows an improper intention to award de facto punitive damages on a contract theory. This contention is meritless in light of the arbitrator's companion statement that he did not find it necessary to rule on the fraud claims; accordingly, he could not have awarded punitive damages based on fraud, oppression, or

findings to be included within the scope of these submissions? We conclude not. Apparently, the parties briefed and argued fraud and also pursued emotional distress issues; however, in looking to the substance of what was submitted to arbitration, we may not look to the arbitration briefs, which were never before the trial court, and we do not consider those portions of the parties' and arbitrator's declarations which describe the merits of the controversy. This record does not show that any legal basis for emotional distress damages was ever made clear. If this award constituted a finding that Stanley Barber committed professional malpractice, there is no authority for such a finding. Nor was this properly a claim for negligent infliction of emotional distress of the *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316] or *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518] varieties. (See also *Thing* v. *La Chusa* (1989) 48 Cal.3d 644 [257 Cal.Rptr. 865, 771 P.2d 814]). This was not a garden variety personal injury case either, but a dispute arising out of contract.

We believe this set of circumstances falls within the policy statement made in *William B. Logan & Associates* v. *Monogram Precision Industries* (1960) 184 Cal.App.2d 12, 17 [7 Cal.Rptr. 212]: "While every intendment of validity must be given an arbitration award [citation], it is well settled that an arbitrator derives his power from the arbitration agreement and he cannot exceed his derived power. [Citation.] To confirm an arbitration award in excess of the powers granted by an arbitration agreement would destroy the very purpose of arbitration and be contrary to the sound policy of encouraging the settlement of private disputes by the voluntary agreement of the parties."

 Where an arbitrator has made an error of law, the courts will not intervene unless the error is based on a completely irrational construction of the contractual provisions in dispute. (*Ray Wilson Co.* v. *Anaheim Memorial Hospital Assn., supra*, 166 Cal.App.3d 1081, 1091.) In light of the limited scope of the arbitration agreement at issue here, the arbitrator had the duty to keep these proceedings confined to the contract issues pled despite the excursions of the parties outside them, since no effective amendments to bring legally cognizable negligence issues before the arbitrator were made.

Accordingly, we conclude the portion of the award granting damages for emotional distress is unsupported by law and cannot stand. The remainder of the damages award is properly traceable to the contract issues originally

malice. (Civ. Code, § 3294 (a).) Read as a whole, the award shows an intention to award purely compensatory damages.

submitted and is correct on its face. In the interests of judicial economy and to avoid the necessity of further proceedings on this rather small claim, we shall reverse with directions to enter a new judgment vacating the award of damages for emotional distress and confirming the award as to the balance.

## III

### Award of Costs to the AAA

Finally, we consider whether the trial court erred in ordering Stanley Barber to pay an additional $750 costs to the AAA.[9] Under section 1287.4, judgment is entered when an award is confirmed; the costs provisions of section 1032 et seq. thus become applicable. As the prevailing party, Cobler was entitled to an award of costs, and received arbitration fees and court costs payable by Stanley Barber. However, in making the award of $750 to the AAA, the court did not route the costs through Cobler, instead awarding the costs directly to a nonparty.

Although the procedure followed by the court was technically incorrect, the substance of the award was proper. Section 1033.5 (c)(4) provides that the court in its discretion may allow or deny costs items not expressly mentioned in the section as well as items assessed upon application. Here, the arbitrator decided Stanley Barber should pay the $750 arbitrator's compensation directly to the AAA; in effect, the trial court confirmed that portion of the award when it ordered "on its own motion" that Stanley Barber should pay the AAA $750 "additional costs due for participation in this arbitration." There is no reason Cobler or the AAA should bear those costs since Cobler prevailed and the AAA was a neutral facilitator of the dispute resolution. Thus, we find no abuse of discretion on the part of the trial court in ordering the $750 to be paid directly to the AAA since it could have achieved the same result by routing the award through Cobler.

### DISPOSITION

Reversed in part with directions to enter a new judgment vacating the award of damages for emotional distress and confirming the award as to the balance. Affirmed in all other respects provided the total amount of arbitra-

---

[9]Since the $750 costs figure is mentioned both in the arbitration award and in the judgment, but was not otherwise expressly confirmed by the court, we assume the same costs item is concerned and there is no duplication of the award to the AAA.

tion fees and arbitration costs, exclusive of court costs, payable by Stanley Barber to Cobler and the AAA does not exceed $1,082.92 ($332.92 plus $750) together with interest.

Benke, Acting P. J., and Froehlich, J., concurred.