[No. F053700. Fifth Dist. Dec. 1, 2008.]

AGRI-SYSTEMS, INC., Plaintiff and Appellant, v.
FOSTER POULTRY FARMS, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II. of the Discussion.

**COUNSEL**

Henry D. Nunez for Plaintiff and Appellant.

Law Offices of Kenyon Mark Lee and Kenyon Mark Lee for Defendant and Respondent.

OPINION

**DAWSON, J.**—A general contractor challenges the superior court's decision to confirm an arbitration award, contending the award should have been vacated because the arbitrator violated his disclosure obligation. The general contractor argues that the arbitrator was required to disclose his law firm's representation of a company that owed the general contractor over $3 million. The record demonstrates that (1) another attorney in the arbitrator's law firm represented the debtor company at the beginning of a bankruptcy proceeding; (2) the debtor company's interests were adverse to the general contractor's interests; (3) those adverse interests resulted in litigation between the debtor company and the general contractor; (4) the arbitrator's law firm had withdrawn from representing the debtor company before the litigation between the debtor company and the general contractor began; and (5) the arbitrator was appointed in the present case a year and a half after his firm's withdrawal as attorney of record for the debtor company in its bankruptcy proceeding.

Neither the California Arbitration Act (CAA),[1] the ethics standards for contractual arbitration, nor the cases applying those provisions address specifically the disclosure of an arbitrator's legal representation of a third party who has an adversarial relationship with a party to the arbitration. We conclude, therefore, that the applicable rule of law is the general requirement that a proposed neutral arbitrator "shall disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial." (§ 1281.9, subd. (a).)

The application of this general requirement to the issue presented in this case poses a question of fact that is subject to review under the deferential substantial evidence standard.[2] We conclude that the superior court's finding that disclosure was not required is supported by substantial evidence.

Consequently, we will affirm the judgment entered after the arbitration award was confirmed.

## FACTS AND PROCEEDINGS

Appellant Agri-Systems, Inc. (Agrisystems), is a Montana corporation based in Billings, Montana, is qualified to do business in California, and is

---

[1] Code of Civil Procedure section 1280 et seq. All further statutory references are to the Code of Civil Procedure unless indicated otherwise.

[2] We note that the following issues currently are pending before the California Supreme Court in *Haworth v. Superior Court*, review granted September 17, 2008, S165906: (1) What is the scope of a neutral arbitrator's required disclosures under section 1281.9? (2) What is the proper standard of review of an order vacating an arbitration award based on an arbitrator's purported failure to disclose grounds for disqualification?

licensed as a contractor in California. The arbitrator found that Agrisystems held itself out as a design-build general contractor specializing in turnkey material handling and processing facilities and represented itself as a major resource for the design and construction of feed mills with a strong performance record.

Respondent Foster Poultry Farms (Foster) is a California corporation.

In May 2002, Foster and Agrisystems entered a construction contract pertaining to a new grain rolling facility at Traver, California, which was intended to produce high outputs of steam-flaked grain. In exchange for $2,699,800, Agrisystems agreed to build the facility. The parties' written construction agreement included a 13-page exhibit A titled "Construction Agreement General Conditions."

Paragraph 14 of the construction agreement general conditions provided that all disputes arising out of the contract document or work performed "shall be decided by arbitration in accordance with the then current Construction Industry Arbitration Rules of the American Arbitration Association." The decision of the arbitrator was to be final and binding on both parties.

A controversy developed concerning the facility's load-out bin discharge systems and the causes for that system's failure to achieve an acceptable rate of flow. Foster contended the flow problems were caused by poor design, poor construction, and the breakdown of original equipment. Agrisystems asserted that the primary causes for impeded flow of the rolled grain were the moisture content being too high and Foster's poor maintenance procedures.

As a result of this controversy, Foster retained 10 percent of the contract price after the facility had been completed.

On November 17, 2003, Agrisystems filed a complaint against Foster alleging that (1) Agrisystems had completed the facility and performed its obligations under the construction agreement, (2) Foster's project engineer had signed off on the facility, (3) Agrisystems had demanded $380,000, plus additional costs that had not been finally determined, and (4) Foster refused to pay the demand, except for $81,331.70. Based on these allegations, Agrisystems contended that Foster breached the terms of the written construction agreement and was liable for the sum of $298,668.30, together with prejudgment interest.

Agrisystems's complaint also included a cause of action for foreclosure of its mechanic's lien, which it alleged was duly filed and recorded in Tulare County.

In February 2004, Foster filed a motion to stay the action and compel arbitration under the arbitration provision contained in paragraph 14 of the construction agreement general conditions. Later in February, the parties stipulated to arbitration. In early March 2004, the superior court ordered the action stayed and submitted it to contractual arbitration.

The American Arbitration Association provided the parties with a list of potential arbitrators, and eventually the parties reached an agreement that Robert Hillison of the law firm Caswell Bell & Hillison LLP would act as the sole arbitrator in the matter.

The arbitration occurred in April 2005. In June 2005, the arbitrator issued a net award in favor of Foster and against Agrisystems in the amount of $178,422.40. The amount awarded reflected the arbitrator's determination that Agrisystems was to bear the $10,000 in administrative fees and expenses of the American Arbitration Association and the $11,199 in compensation and expenses of the arbitrator.

In September 2005, Agrisystems filed a motion for an order correcting or vacating the arbitration award, alleging that the arbitrator had an undisclosed conflict of interest. (See § 1286.2 [grounds for vacation of award].) The motion asserted that (1) Coast Grain Company, a prior client of the arbitrator's law firm, was an adversary of Agrisystems in another matter, (2) the arbitrator's law firm represented Coast Grain Company in its bankruptcy proceeding, and (3) Coast Grain Company had substantial, ongoing litigation against Agrisystems in both bankruptcy court and federal district court.

The superior court denied Agrisystems's motion on January 9, 2006. It found there was no failure to disclose by the arbitrator because "[t]he relationship alleged between the arbitrator's law firm (not the arbitrator himself) and a third party adversary of [Agrisystems] was not substantial." The court noted that the law firm's representation of Coast Grain Company in bankruptcy proceedings was for a limited time during 2002, did not involve any adversarial proceedings against Agrisystems, and ended before the bankruptcy trustee initiated an adversary proceeding against Agrisystems.

Agrisystems appealed to this court from the order denying its motion. On December 6, 2006, this court dismissed the appeal on the ground that an order denying vacation or correction of an arbitration award is not appealable. (*Agri-Systems v. Foster Poultry Farms* (Dec. 6, 2006, F049694) (app. dism.).)

On March 22, 2007, after the remittitur issued from this court, Foster filed a petition for confirmation of the arbitration award in the superior court. (See § 1285 et seq. [petition and procedure to confirm, correct or vacate arbitration

award].) Agrisystems filed an opposition to the petition for confirmation of the award, asserting that the arbitrator breached his obligation to disclose his law firm's representation of Coast Grain Company, an adversary of Agrisystems.

On April 16, 2007, the superior court adopted its tentative ruling to grant the petition to confirm the arbitration award.

On May 14, 2007, the superior court filed a judgment that required Agrisystems to pay Foster the sum of $178,442.40, plus interest on that sum from June 15, 2005, the date of the arbitration award.

A notice of entry of judgment was filed in July 2007, and Agrisystems's notice of appeal followed.

## DISCUSSION

### I. Deficiencies in the Tentative Ruling

We first consider Agrisystems's claim that the proceeding should be remanded to the lower court because its tentative ruling insufficiently analyzes whether any conflict exists.

■ None of the cases cited by Agrisystems addresses the level of detail that a superior court must set forth when ruling on a petition to confirm an arbitration award. In addition, Agrisystems fails to cite the provision of the CAA that addresses the contents of the superior court's written decision. Section 1291 provides: "A statement of decision shall be made by the court, if requested pursuant to Section 632, whenever an order or judgment, except a special order after final judgment, is made that is appealable under this title." The implication of this provision is that the superior court has no obligation to prepare a statement of decision unless a party requests one. (E.g., *Stermer v. Modiano Constr. Co.* (1975) 44 Cal.App.3d 264, 271–272 [118 Cal.Rptr. 309] [under § 1291, findings of fact and conclusion of law are not required unless requested].)

Agrisystems's appellate brief includes no citation to the record that demonstrates a request for a statement of decision was made in accordance with section 632. Nor has our own review of the appellate record uncovered such a request.

■ Consequently, Agrisystems has failed to demonstrate that it followed the two-step process set forth in *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130 [275 Cal.Rptr. 797, 800 P.2d 1227] for asserting that a trial court's

tentative decision is deficient. The first step requires the party to "request a statement of decision as to specific issues to obtain an explanation of the trial court's tentative decision (§ 632)." (*Id.* at p. 1134.) The second step requires the party to bring the purported deficiencies in the statement of decision to the attention of the trial court (§ 634). (*In re Marriage of Arceneaux*, at p. 1134.) Pursuant to section 634, a party must point out deficiencies in the statement of decision as a condition of avoiding implied findings that support the judgment.

The legal consequences of Agrisystems's failure to follow the two-step process are that (1) the superior court did not commit reversible error by failing to provide a more detailed rationale for its order confirming the arbitration award and (2) "the appellate court will imply findings to support the judgment." (*In re Marriage of Arceneaux, supra,* 51 Cal.3d at p. 1134; see § 634.)

Thus, we reject Agrisystems's argument that the trial court committed procedural error by providing an insufficient analysis of the alleged conflict.

II. *Collateral Estoppel**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III. *Arbitrator's Obligation to Disclose Relationships Adverse to a Party*

A. *Rules Regarding Disclosure*

The CAA addresses the disclosures that a proposed neutral arbitrator must make to the parties as well as the consequences of failing to make a required disclosure.

Section 1286.2, subdivision (a)(6) provides that a court shall vacate an arbitration award if the arbitrator "failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware." (See *Casden Park La Brea Retail LLC v. Ross Dress For Less, Inc.* (2008) 162 Cal.App.4th 468, 477–478 [75 Cal.Rptr.3d 763] [in landlord-tenant dispute, neutral arbitrator on a three-member panel had no duty to disclose coworkers' business dealings with tenant and arbitrator chosen by tenant where neutral arbitrator was unaware of coworkers' transactions]; see also *Luce, Forward, Hamilton & Scripps, LLP v. Koch* (2008) 162 Cal.App.4th 720, 735 [75 Cal.Rptr.3d 869] [vacatur of arbitration award was not required where arbitrator refused to disqualify himself based on disclosures he was not legally required to make].)

---

*See footnote, *ante,* page 1128.

### 1. *Statutory disclosure provisions*

■ Section 1281.9, subdivision (a) sets forth the general requirement that a proposed neutral arbitrator "shall disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial." The subdivision also provides a nonexclusive list of matters that qualify for disclosure under this general standard. The list (1) identifies specific matters that must be disclosed and (2) incorporates disclosure standards from other sources.

The specific matters that must be disclosed include "(5) Any attorney-client relationship the proposed neutral arbitrator has or had with any party or lawyer for a party to the arbitration proceeding. [¶] (6) Any professional or significant personal relationship the proposed neutral arbitrator . . . has or has had with any party to the arbitration proceeding or lawyer for a party." (§ 1281.9, subd. (a).)

The incorporated disclosure standards include "(1) The existence of any ground specified in Section 170.1 for disqualification of a judge. . . . [¶] (2) Any matters required to be disclosed by the ethics standards for neutral arbitrators adopted by the Judicial Council pursuant to this chapter." (§ 1281.9, subd. (a).)

The only provisions of section 170.1 mentioned in Agrisystems's opening appellate brief are from subdivision (a)(6)(A), which requires a judge to step aside if "[f]or any reason: [¶] (i) The judge believes his or her recusal would further the interests of justice. [¶] (ii) The judge believes there is a substantial doubt as to his or her capacity to be impartial. [¶] (iii) A person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial." The latter of these three requirements is similar to the general standard contained in section 1281.9, subdivision (a).

### 2. *Ethical standards*

In section 1281.85, subdivision (a), the Legislature directed that, "[b]eginning July 1, 2002, a person serving as a neutral arbitrator pursuant to an arbitration agreement shall comply with the ethics standards for arbitrators adopted by the Judicial Council."

The Judicial Council adopted the California Rules of Court, Ethics Standards for Neutral Arbitrators in Contractual Arbitrations (standards). Standard 7 requires the proposed arbitrator to make comprehensive disclosures regarding potential grounds for disqualification.

Subparagraphs (1) through (14) of standard 7(d) specify the information that must be disclosed. The only one of these paragraphs addressed in Agrisystems's opening appellate brief is standard 7(d)(7), which provides for the disclosure of "[a]ny attorney-client relationship the arbitrator has or has had with a party or lawyer for a party."[3]

Agrisystems correctly acknowledges that standard 7(d) does not mention explicitly the disclosure of an arbitrator's past or current legal representation of a third party with interests adverse to a party to the arbitration. The lack of a specific disclosure requirement, however, is not fatal to Agrisystems's claim. The comment to standard 7 states: "While the remaining subparagraphs of [standard 7](d) require the disclosure of specific interests, relationships, or affiliations, these are only examples of common matters that could cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial. The absence of the particular interests, relationships, or affiliations listed in the subparagraphs does not necessarily mean that there is no matter that could reasonably raise a question about the arbitrator's ability to be impartial and that therefore must be disclosed." (Cal. Rules of Court, Ethics Standards for Neutral Arbitrators in Contractual Arbitration, com. to std. 7.)

### B. *Contentions of the Parties*

Agrisystems relies primarily on two provisions to support its contention that the arbitrator was required to disclose his relationship with Coast Grain Company. First, Agrisystems quotes standard 7(d)(7), which requires disclosure of "[a]ny attorney-client relationship the arbitrator has or has had with a party or lawyer for a party," and contends that it "simply means that [the arbitrator] should have disclosed that he [was a] member of the firm that represented Coast Grain Company in its Chapter 11 reorganization." Second, under the general disclosure standard, Agrisystems contends that a person aware of the facts might reasonably entertain a doubt that the arbitrator would be able to be impartial. (§ 1281.9, subd. (a); std. 7(d)(14)(A); see § 170.1, subd. (a)(6)(A)(iii).)

Foster contends that (1) there was no existing adverse relationship to disclose at the time that the arbitrator was proposed and appointed, (2) whether disclosure was required is a factual question for the trier of fact, (3) the superior court's findings are subject to review under the substantial evidence standard, and (4) those findings are supported by substantial evidence.

---

[3] This language restates the disclosure required by section 1281.9, subdivision (a)(5).

## C. *Facts*

Agrisystems entered into contracts with Coast Grain Company in 2000 and 2001 to act as the general contractor in the construction of a steam flaking facility and agricultural processing plant in Madera, California. Agrisystems asserts it is due $3,530,000 under the two contracts with Coast Grain Company. Agrisystems recorded a mechanic's lien against the property and asserts that it has a second deed of trust as well as a judgment lien against the Madera plant.

On October 17, 2001, an involuntary petition was filed against Coast Grain Company pursuant to chapter 11 of the Bankruptcy Code in the Fresno Division of the United States Bankruptcy Court for the Eastern District of California, case No. 01-19647-B-11. The schedule of creditors of Coast Grain Company filed in the bankruptcy proceeding listed Agrisystems.

Hagop Bedoyan, a partner in the arbitrator's law firm, represented Coast Grain Company in the involuntary bankruptcy proceeding.

On March 3, 2002, the bankruptcy court appointed Greg Braun to act as the chapter 11 trustee in the Coast Grain Company bankruptcy proceeding. The trustee, as legal representative for the bankruptcy estate of Coast Grain Company, engaged his own legal counsel. After March 3, 2002, Bedoyan and the arbitrator's law firm played no further role in the legal activity of Coast Grain Company, except for filing a motion to withdraw as attorney of record and filing a final attorney fees application. The order authorizing the withdrawal of Bedoyan and the arbitrator's law firm was signed on September 23, 2002.

On November 27, 2002, Coast Grain Company filed a complaint against Agrisystems in the United States District Court for the Eastern District of California (*Brown v. Agri-Systems* (E.D.Cal., May 16, 2006, No. CV-F-02-6482 AWI SMS) 2006 U.S.Dist. Lexis 29947), alleging a construction defect and seeking damages in excess of $9 million. The law firms representing Coast Grain Company in that lawsuit are Kimble, MacMichael & Upton and the Walter Law Group, both of Fresno.

A declaration of the president of Agrisystems, filed in the present case, asserts that in the construction defect litigation between Coast Grain Company and Agrisystems, Coast Grain Company has alluded to Foster's claim against Agrisystems to help prove its own claim that Agrisystems's construction work was faulty. The declaration further asserts that the arbitration award in favor of Foster in the present case helps and supports the contentions of Coast Grain Company in its suit against Agrisystems.

On December 16, 2002, in connection with its bankruptcy proceeding, Coast Grain Company filed an adversary complaint against Agrisystems which objected to Agrisystems's creditor claims, sought to avoid preferential transfers to Agrisystems, and requested a determination of the extent and validity of Agrisystems's liens.

In January 2004, Agrisystems filed its own chapter 11 bankruptcy proceeding as a result of three major disputes involving accounts for which Agrisystems had not been paid. The disputes concerned Coast Grain Company, Foster, and a third matter that subsequently was settled. Both Coast Grain Company and Foster voted against the confirmation of the reorganization plan that Agrisystems presented to the bankruptcy court. In addition, Coast Grain Company tried to convert Agrisystems's bankruptcy proceeding to a chapter 7 liquidation in an attempt to avoid the litigation with Agrisystems and paying the $3 million debt owed to Agrisystems. The declaration filed by the president of Agrisystems in the present case stated his belief that Coast Grain Company and Foster were working with each other to prevent the confirmation of Agrisystems's plan of reorganization.

Based on the foregoing facts, Agrisystems describes Coast Grain Company as its "largest creditor and adversary."

### D. *Analysis*

#### 1. *Disclosure of attorney-client relationships*

First we consider Agrisystems's contention that standard 7(d)(7) regarding "[a]ny attorney-client relationship the arbitrator has or has had with a party" should be interpreted to require disclosure of an arbitrator's legal representation of a third party with interests adverse to a party to the arbitration.

■ We disagree with this interpretation. The provision is clear on its face and not reasonably susceptible to the interpretation proposed by Agrisystems. (See *Twedt v. Franklin* (2003) 109 Cal.App.4th 413, 417 [134 Cal.Rptr.2d 740] [questions of statutory interpretation are questions of law subject to this court's independent review].) We conclude that the reference to an "attorney-client relationship" and the use of the prepositional phrase "with a party" means that the arbitrator must have acted as an attorney for a party to the arbitration. Here, because Coast Grain Company was not a party to the arbitration, the arbitrator was not required by standard 7(d)(7) to disclose his law firm's representation of that company.

#### 2. *Reasonable person standard*

■ Neutral arbitrators specifically are required to disclose "all matters that could cause a *person* aware of the facts to reasonably entertain a doubt

that the proposed arbitrator would be able to be impartial . . . ." (Std. 7(d), italics added; see § 1281.9, subd. (a); std. 7(d)(14)(A).) The "person" referenced in this disclosure requirement concerning partiality is an objective, reasonable person. (*Guseinov v. Burns* (2006) 145 Cal.App.4th 944, 960 [51 Cal.Rptr.3d 903].)[4]

In applying this objective, reasonable person standard, "[w]hether a particular relationship requires disclosure is a factual question to be determined by the trier of fact in each case." (*Guseinov v. Burns, supra,* 145 Cal.App.4th at p. 959.) Accordingly, we review the superior court's relevant findings of fact under the deferential substantial evidence standard. (*Ibid.*)

In this case, the order implementing the stipulation that the lawsuit between Agrisystems and Foster would be stayed and the matter submitted to arbitration was filed on March 2, 2004. Thus, the arbitrator could not have been appointed until two years after his law firm ceased active representation of Coast Grain Company in the bankruptcy proceeding. On a more formal level, the appointment of the arbitrator did not occur until approximately a year and a half after the bankruptcy court filed the order granting the request of the arbitrator's law firm to withdraw as counsel of record in Coast Grain Company's bankruptcy proceeding.

Also, the declarations in the record demonstrate that the arbitrator's law firm did not represent Coast Grain Company during the pendency of the construction defect litigation in federal district court or the adversary proceeding in bankruptcy court.

Furthermore, the arbitrator did not provide legal services or advice directly to Coast Grain Company. His attorney-client relationship with Coast Grain Company was indirect because another partner in his law firm acted as attorney for Coast Grain Company in its bankruptcy proceeding. (Cf. *Jessen v. Hartford Casualty Ins. Co.* (2003) 111 Cal.App.4th 698, 709–710 [3 Cal.Rptr.3d 877] [distinction between direct and indirect representation of former client is a factor to consider in determining whether attorney should be disqualified in a subsequent representation case].)

■ Based on these underlying facts, there is adequate support for the superior court's implied finding of ultimate fact that an objective person would not reasonably entertain doubts about the arbitrator's ability to be impartial.

---

[4] In a case decided before the enactment of section 1281.9 or the adoption of the standards, one court stated the question was whether an " 'average person on the street' " aware of the facts would harbor doubts as to the arbitrator's impartiality. (*United Farm Workers of America v. Superior Court* (1985) 170 Cal.App.3d 97, 104 [216 Cal.Rptr. 4].)

### 3. Cobler

The parties have cited, and we have located, only one published California decision that addresses whether an arbitrator's legal representation of a third party with interests adverse to a party to the arbitration is sufficient to create an appearance of partiality. (*Cobler v. Stanley, Barber, Southard, Brown & Associates* (1990) 217 Cal.App.3d 518 [265 Cal.Rptr. 868] (*Cobler*).) Preliminarily, we note that *Cobler* was decided before the enactment of section 1281.9 or the adoption of the standards. Thus, the court in *Cobler* did not address the disclosure provisions applicable in this case. Given the dearth of authority, however, and a comparable ethical standard pertinent in *Cobler*, we proceed to look there for an answer to our inquiry.

In *Cobler*, a career consulting agency sought to vacate an arbitration award in favor of a former client. (*Cobler, supra*, 217 Cal.App.3d at p. 522.) The grounds asserted by the agency included the claim that there was apparent bias on the part of the arbitrator. (*Ibid.*) The claim of apparent bias was based on the fact that (1) a law partner of the arbitrator was representing a major competitor of the agency in an unfair trade practices lawsuit that the agency had filed against that competitor and (2) the arbitrator's law partner had spent five days deposing the president and sole shareholder of the agency's parent corporation, which included questions that impliedly challenged his credibility. (*Id.* at p. 524.)

The appellate court noted that the applicable standard provided "that an arbitrator's failure to disclose to the parties any dealings which might create an impression of possible bias is grounds for vacating the award." (*Cobler, supra*, 217 Cal.App.3d at p. 527.) The court then stated that whether a particular business relationship was required to be disclosed under this standard was a factual question. (*Ibid.*) The court concluded that there was adequate support in the record for the trial court's finding of no actual bias based on the arbitrator's declaration that he was not aware of the potential conflict until after the arbitration decision had been made. (*Cobler, supra*, at p. 529.)

The trial court had never decided the merits of the issue of apparent bias, however, which is the issue closest to the issue presented in this appeal.[5] Instead, it had found that the agency waived that issue and was estopped from asserting it later. (*Cobler, supra*, 217 Cal.App.3d at p. 529.) The appellate court upheld these findings. (*Ibid.*) As a result, the analysis in *Cobler*

---

[5] Here, the issue is whether an informed, objective person would reasonably entertain a doubt about the arbitrator's ability to be impartial. (§ 1281.9, subd. (a).) In part III.D.2., *ante*, we concluded that the superior court's implied finding on this issue was supported by substantial evidence.

provides little guidance on how the general disclosure standard contained in section 1281.9, subdivision (a) should be applied to the facts of this case. It does, however, reaffirm what we have stated above. Whether a particular relationship must be disclosed under that general standard is a question to be determined by the trier of fact. (Accord, *Advantage Medical Services, LLC v. Hoffman* (2008) 160 Cal.App.4th 806, 816 [72 Cal.Rptr.3d 935] [whether information that might indicate bias triggers an arbitrator's duty to disclose is a question of fact subject to review under the substantial evidence test].)

### 4. *Findings regarding knowledge*

The parties' arguments, both in their briefs and at oral argument, are based on conflicting versions of the facts of this case.

Agrisystems asserts the arbitrator knew of his law firm's former representation of Coast Grain Company in its bankruptcy proceeding and Coast Grain Company's adversarial relationship with Agrisystems when he made the disclosures required of potential arbitrators. (See § 1286.2, subd. (a)(6) [arbitrator's failure to disclose a ground for disqualification "of which the arbitrator was then aware" requires court to vacate the award].)

As a court of review, we cannot accept Agrisystems's factual assertion. First, the superior court made no finding that the arbitrator possessed this knowledge. Second, we cannot infer such knowledge existed because the doctrine of implied findings applies to the superior court's decision. (See pt. I., *ante.*) Under that doctrine, an appellate court must presume that the superior court impliedly found all facts in favor of the prevailing party, so long as those implied findings are supported by substantial evidence. (*SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 462 [17 Cal.Rptr.3d 96].) In this case, there was no direct evidence as to the arbitrator's state of awareness. Furthermore, the surrounding circumstances are such that the superior court could have inferred either that the arbitrator knew or did not know of his law firm's prior representation of Coast Grain Company. Consequently, we must presume the superior court impliedly found the arbitrator was not aware of the prior representation.

Agrisystems also asserts that it was not aware that the arbitrator's law firm previously represented Coast Grain Company when it agreed to have him appointed to arbitrate its dispute with Foster. The declaration of Agrisystems's president asserts that in August 2005 he first learned the arbitrator's law firm had represented Coast Grain Company when Agrisystems's bankruptcy counsel alerted him of the fact.

Agrisystems's assertion of fact directly contradicts the superior court's statement that "the evidence supports the fact that [Agrisystems] or

[Agrisystems's] counsel knew of the relationship back in 2001, and yet still chose this arbitrator." The superior court made this finding in support of its alternate rationale that Agrisystems forfeited/waived any objection to the arbitrator. The superior court appears to have based its finding on information contained in proofs of service and other documents from Coast Grain Company's bankruptcy proceeding. Based on our conclusion that there was no duty to disclose, we need not address the superior court's alternate rationale and whether findings underlying that rationale were supported by sufficient evidence.

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.

Wiseman, Acting P. J., and Hill, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 18, 2009, S169632. George, C. J., did not participate therein.