Filed 11/4/13  Diamond Mfg. & Engineering Co. v. Equipment Parts Wholesale CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DIAMOND MANUFACTURING & ENGINEERING CO., | F064701 |
| Plaintiff, Cross-defendant and Respondent, | (Super. Ct. No. 05CECG02942) |
| v. | **OPINION** |
| EQUIPMENT PARTS WHOLESALE, LLC et al. | |
| Defendants, Cross-complainants and Appellants. | |

APPEAL from a judgment of the Superior Court of Fresno County.  Alan M. Simpson, Judge.

Perkins, Mann & Everett and Douglas V. Thornton for Defendants, Cross-complainants and Appellants.

Peel/Garcia, Chester E. Walls and Manuel Garcia for Plaintiff, Cross-defendant and Respondent.

-ooOoo-

Plaintiff Diamond Manufacturing & Engineering Co. (Diamond) entered into a contract with defendant Equipment Parts Wholesale, LLC (EPW) under the terms of which Diamond was to manufacture certain quantities of a machine known as a scissor lift, which would be purchased by EPW for resale. After delays and other problems occurred in Diamond's manufacturing efforts, EPW elected to terminate the contract. Diamond then sued for damages based on alleged breach of contract and related causes of action, and EPW filed a cross-complaint against Diamond. The parties agreed to resolve their dispute in binding arbitration. Arbitration proceedings were held and, after considering the evidence and arguments presented by the parties, the arbitrator issued an award in favor of Diamond in the sum of $386,847.14. Diamond petitioned the trial court to confirm the arbitration award pursuant to Code of Civil Procedure section 1285.[1] In response, EPW requested that the trial court either (i) vacate the award since the arbitrator allegedly failed to disclose a potential conflict creating an appearance of bias or (ii) correct the amount of the award based on an alleged evident miscalculation of figures. The trial court denied both of EPW's requests, confirmed the arbitration award and entered judgment in favor of Diamond. EPW timely appealed.[2] We conclude that the trial court properly confirmed the arbitration award. Therefore, the judgment is affirmed.

## FACTS AND PROCEDURAL HISTORY

In 2003, EPW decided to expand its business from being a seller of replacement parts in the lift industry to selling completely manufactured scissor lifts. To effectuate

---

[1] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

[2] EPW's affiliate, defendant California Manufacturing & Engineering Co. (CMEC), is a co-appellant with EPW, named with EPW on the opening and reply briefs filed herein and represented by the same counsel. For convenience and ease of expression, we follow the parties' approach and treat EPW as the principal appellant in our discussion of this case. We do so with the understanding that CMEC is likewise an appellant, whose arguments are identical to EPW's.

this goal, EPW purchased the assets and design plans of a former scissor lift manufacturer. However, EPW needed to find a company that would undertake the manufacturing process. After other prospects fell through, EPW settled on using Diamond as the manufacturer. EPW was aware that Diamond did not have any experience in manufacturing scissor lifts.

In 2004, EPW and Diamond reached contractual terms for the manufacture of scissor lifts by Diamond that would be purchased by EPW for resale. Diamond was to manufacture a total of 700 scissor lifts under the terms of two purchase orders. The first purchase order (dated April 27, 2004) called for Diamond to manufacture and EPW to purchase 350 model No. 2633 lifts at a unit price of $5,400, for a total purchase price of $1,890,000, with payments due "net thirty days." The second purchase order (dated May 5, 2004) called for the manufacture and purchase of 350 model No. 1932 lifts at a unit price of $3,600, for a total purchase price of $1,260,000, also with payment terms of "net thirty days." The purchase order for the model No. 2633 lifts included a delivery schedule.

Production was much slower than either party anticipated, but each side had differing explanations for what caused the delayed output. Diamond contended the delays were due to unexpected problems such as inability to secure parts within needed time frames, problems with the platforms on lifts that were partially built by a third party before Diamond became the manufacturer, nonpayment by EPW of its invoices, and normal problems in learning and implementing a new manufacturing system. On the other hand, EPW claimed that the problems were due to the fact that Diamond failed to adequately staff its facility with personnel qualified to manage the production lines and meet inventory demands. EPW also referred to Diamond's nonpayment of vendors, which created delivery delays and required EPW to step in and pay delinquent accounts to vendors to make sure the parts kept coming. EPW also expressed concerns regarding quality and safety issues.

On September 24, 2004, shortly after Diamond moved to a bigger production facility in Selma that was shared by EPW, EPW notified Diamond that their contractual relationship was terminated. EPW also informed Diamond that EPW's new affiliate, CMEC, would be taking over the production. At the time EPW terminated the contract, Diamond had completed approximately 51 of the model No. 2633 lifts and 60 of the model No. 1932 lifts, although additional lifts were finished before Diamond left the premises.

One year later, on September 16, 2005, Diamond filed its complaint against EPW, asserting causes of action for breach of contract, common counts and fraud. The complaint also named EPW's related entity, CMEC, as a defendant. EPW filed a cross-complaint against Diamond. By the time of the arbitration proceedings, EPW's operative pleading was its first amended cross-complaint, setting forth causes of action against Diamond for breach of contract, breach of implied covenant of good faith and fair dealing, negligent misrepresentation and fraud.

The parties entered a stipulation for binding arbitration of their dispute. On June 14, 2010, the trial court appointed Timothy J. Buchanan, an attorney with the law firm of McCormick Barstow et al., to serve as the neutral arbitrator to conduct the arbitration of the case. The arbitration hearings, including presentation of evidence, were held on May 9, 10, 11, 12, 13, 16, 17, 18, 19 and 20, 2011. On June 29, 2011, the arbitrator issued and served his written arbitration award. After considering all the offsetting and/or conflicting claims between the parties, the arbitrator awarded to Diamond the sum of $386,847.14 in damages, payable jointly and severally by EPW and CMEC. The award also held that Diamond was entitled to statutory costs under section 1032, upon a proper application to the trial court for such costs, except that the costs of the arbitration and the attorney fees of each party would be borne by the party incurring them.

4.

On September 20, 2011, Diamond filed a motion in the trial court to confirm the arbitration award. On October 5, 2011, EPW filed its response thereto, seeking to have the award vacated due to the arbitrator's alleged failure to make a required disclosure. Specifically, EPW argued the arbitrator was required to disclose that, in a recently filed federal court action involving unrelated parties and claims, the arbitrator was serving as the attorney for the plaintiff therein, while, at the same time, one of the attorneys in the law firm that represented EPW was representing the defendants in that same federal action. According to EPW, this situation had to be disclosed because it might cause a reasonable person to doubt whether the arbitrator would be impartial in the arbitration. Alternatively, EPW's response to Diamond's motion to confirm requested that the trial court correct the amount of the arbitration award due to an alleged damage calculation error. After a reply by Diamond and a surreply by EPW, the trial court confirmed the arbitration award on December 15, 2011. Judgment was entered based on the confirmed arbitration award. EPW appealed, arguing that its request to vacate or correct the award should have been granted.

## DISCUSSION

### I.      Questions Presented and Standard of Review

Preliminarily, we observe that the grounds for challenging a contractual arbitration award are exceptionally limited. Courts may not review the merits of the controversy, the arbitrator's reasoning, or the sufficiency of the evidence supporting the award. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11 (*Moncharsh*).) Even "an error of law apparent on the face of the award that causes substantial injustice does not provide grounds for judicial review." (*Id*. at p. 33.) The sole grounds for challenging an arbitration award are those set forth in sections 1286.2 and 1286.6, which provide that an award shall be vacated or corrected in certain limited circumstances. (*Moncharsh*, *supra*, at p. 33.) "Although the parties to an arbitration agreement accept some risk of an erroneous decision by the arbitrator, 'the Legislature has reduced the risk to the parties of

5.

such a decision by providing for judicial review in circumstances involving serious problems with the award itself, or with the fairness of the arbitration process.' [Citations.]" (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 380 (*Haworth*) [referring to §§ 1286.2 & 1286.6].)

Under section 1286.2, one of the grounds for vacating an arbitration award is that the arbitrator "failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware .…" (§ 1286.2, subd. (a)(6).) A person appointed to serve as a neutral arbitrator is required to disclose "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial .…" (§ 1281.9, subd. (a).) Following such disclosures, the parties are afforded a window of time in which to disqualify the proposed neutral arbitrator by serving a timely notice or demand. (§ 1281.91, subds. (b) & (d).) However, if the arbitrator failed to make the required disclosures, "the court shall vacate the award." (§ 1286.2, subd. (a)(6).) In the present appeal, EPW argues the trial court should have vacated the arbitration award because, according to EPW, the arbitrator failed to disclose a disqualifying relationship.

The parties dispute the standard of review that is applicable where an arbitration award was challenged in the trial court on the ground that the arbitrator failed to disclose circumstances creating an appearance of partiality. The recent case of *Haworth* has clarified the applicable standard of review. (*Haworth*, *supra*, 50 Cal.4th at p. 383.) In *Haworth*, the Supreme Court held that the issue of whether an arbitrator was required to disclose a particular matter is "a mixed question of fact and law that should be reviewed *de novo*." (*Id*. at p. 385, italics added.) That is, where the underlying facts are not in dispute, the question of whether, under the given circumstances, an objective reasonable person would entertain doubts about the arbitrator's ability to be impartial is reviewed de novo. (*Id*. at pp. 385-386.) In so holding, the Supreme Court noted that concerns of judicial administration militate in favor of de novo review in such cases. (*Id*. at p. 386.)

6.

Post-*Haworth* appellate decisions have routinely applied the de novo standard of review to cases such as ours. (See, e.g., *Gray v. Chiu* (2013) 212 Cal.App.4th 1355, 1362 [appeal from judgment confirming arbitration award—disclosure issue reviewed de novo]; *Nemecek & Cole v. Horn* (2012) 208 Cal.App.4th 641, 647 (*Nemecek*) [same]; *Benjamin, Weill & Mazer v. Kors* (2011) 195 Cal.App.4th 40, 52 [same].)

In the *Haworth* case, the underlying facts were not in dispute (*Haworth*, *supra*, 50 Cal.4th at p. 383), which is also the case here. To the extent that the trial court's ruling rests upon a determination of disputed factual issues, we apply the substantial evidence test to those underlying factual issues. (See *Maaso v. Signer* (2012) 203 Cal.App.4th 362, 371; *Malek v. Blue Cross of California* (2004) 121 Cal.App.4th 44, 55-56.)

The other issue before us stems from the fact that, in confirming the arbitration award and entering judgment, the trial court rejected EPW's request to correct alleged miscalculations in the award. EPW contends on appeal that the trial court should have corrected the amount of the award because, allegedly, "[t]here was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award …." (§ 1286.6, subd. (a).) As with the disclosure issue, the parties dispute the applicable standard of review we should apply to this question. We conclude that the same de novo standard is applicable to our review of the trial court's order, which concurrently confirmed the award and denied EPW's request that the award be corrected under section 1286.6. In this regard, we simply follow the general rule in appeals such as this: "'On appeal from an order confirming an arbitration award, we review the trial court's order (not the arbitration award) under a de novo standard. [Citations.] To the extent that the trial court's ruling rests upon a determination of disputed factual issues, we apply the substantial evidence test to those issues.' [Citation.]" (*Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1217; *Lindenstadt v. Staff Builders, Inc.* (1997) 55 Cal.App.4th 882, 892, fn. 7; accord, *Giorgianni v. Crowley*

7.

(2011) 197 Cal.App.4th 1462, 1471, citing *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9.)

## II. Trial Court Properly Denied EPW's Challenge to Award Based on Alleged Nondisclosure by Arbitrator

As noted above, EPW sought to vacate the arbitration award on the ground that the arbitrator failed to disclose a potential conflict. The purported conflict stemmed from the arbitrator's legal representation of a client in a federal action where the opposing party in the action was represented by Attorney John Branch of the law firm representing EPW, Perkins, Mann & Everett (PME). The federal action was filed on April 12, 2011, by the arbitrator, Mr. Buchanan, acting as local counsel for the plaintiff in the federal action, Interplexus Corporation. The federal action was based on alleged trademark infringement and misappropriation of trade secrets. Mr. Branch represented a defendant in the federal action, T.E. Neesby, Inc. EPW argued that this relationship had to be disclosed by the arbitrator because it created an appearance of bias; that is, according to EPW, a reasonable person would entertain doubts that the arbitrator would be able to be impartial. The trial court disagreed, finding the purported conflict was not a matter that had to be disclosed since there was no appearance of bias or partiality created by it under the circumstances.

In reaching that conclusion, the trial court summarized the underlying chronology of events, as follows: "[O]n January 11, 2011, Mr. Branch of PME sent notice to an attorney in Washington state, Mr. [Frank] Siderius, that PME would be representing the defendants in that dispute. There is nothing on the face of that letter that would indicate that Mr. Siderius had yet associated in the McCormick Barstow LLP firm or Mr. Buchanan.… [¶] The federal action was filed by Mr. Buchanan on April 12, 2011.… Service of the complaint in the federal action was effectuated on May 9, 2011, the same date the arbitration in this action commenced.… [¶] Before the federal action was initiated and served, Mr. Branch's only communications had been with Mr. Siderius,

the Washington attorney.… [¶] On or about May 25, 2011, Mr. Branch contacted Mr. Buchanan to request an extension of time to respond to the federal action.… There is nothing to indicate that Mr. Buchanan knew before that date that Mr. Branch or PME was representing Neesby and that he should disclose the purported conflict. Certainly, it seems Mr. Branch and Mr. Thornton[3] did not know that Mr. Siderius had associated in McCormick Barstow LLP.… [¶] … [¶] It was not until May 25, 2011, that [EPW] knew that the arbitrator in this action, Mr. Buchanan, allegedly had a conflict he had failed to disclose, when Mr. Branch contacted Mr. Buchanan to request an extension of time to respond to the federal action, five days after the arbitration ha[d] been concluded."

Based on all of the circumstances, including the fact that there was no evidence the arbitrator or the parties knew of the purported conflict until May 25, 2011, five days after the arbitration hearings had concluded, the trial court concluded that a reasonable person would not entertain a doubt that the arbitrator would be able to be impartial. The trial court also noted, in language strongly suggesting but not explicitly referring to a waiver, that EPW waited until October 5, 2011, "some 98 days after service of the arbitrator's award" to seek to vacate the award. That is, rather than promptly moving to disqualify the arbitrator after it learned of the purported conflict on May 25, 2011, EPW waited. The award was issued on June 29, 2011. EPW did not move to vacate the award until the time of its response to Diamond's petition to confirm. The trial court noted further that EPW's discussion of the nondisclosure issue was perfunctory at best: EPW devoted only two paragraphs to that issue, while the vast majority of the motion concerned the matter of possible correction of the amount of the award.

We now must take a closer look at the disclosure requirements to evaluate the issue of whether the trial court was correct that the arbitrator was not obliged to disclose the purported conflict.

---

**3**        Douglas Thornton was and is the PME attorney representing EPW herein.

A.     Overview of Arbitrator's Duty to Disclose

Section 1281.9, subdivision (a), sets forth the general requirement that a proposed neutral arbitrator "shall disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial …."  Thereafter, the subdivision (i) provides a nonexclusive list of specific matters that must be disclosed under this general requirement and (ii) incorporates other standards from other sources requiring disclosure of any matters that would have to be disclosed under those other standards.  (*Agri-Systems, Inc. v. Foster Poultry Farms* (2008) 168 Cal.App.4th 1128, 1136.)  The specific matters listed in the subdivision that must be disclosed include, among other things, "(4) The names of the parties to all prior or pending … cases involving any party to the arbitration or lawyer for a party for which the proposed neutral arbitrator served or is serving as neutral arbitrator ….  [¶]  (5) Any attorney-client relationship the proposed neutral arbitrator has or had with any party or lawyer for a party to the arbitration proceeding.  [¶]  (6) Any professional or significant personal relationship the proposed neutral arbitrator … has or has had with any party to the arbitration proceeding or lawyer for a party."  (§ 1281.9, subd. (a).)  The incorporated disclosure standards include "(1) The existence of any ground specified in Section 170.1[4] for disqualification of a judge….  [¶]  (2) Any matters required to be disclosed by the ethics standards for neutral arbitrators adopted by the Judicial Council pursuant to this chapter."[5]  (§ 1281.9, subd. (a).)

---

**4**     We note that section 170.1, subdivision (a)(6)(A), provides that a judge shall be disqualified if "[f]or any reason:  [¶]  (i) The judge believes his or her recusal would further the interests of justice.  [¶]  (ii) The judge believes there is a substantial doubt as to his or her capacity to be impartial.  [¶] (iii) A person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial."

**5**     The Judicial Council adopted the California Rules of Court, Ethics Standards for Neutral Arbitrators in Contractual Arbitrations (Ethics Standards), of which standard 7 specifies disclosure requirements.  (*Haworth*, *supra*, 50 Cal.4th at p. 381.)  Standard 7(d)

In *Haworth*, our Supreme Court provided the following synopsis of the above requirements: "The applicable statute and standards enumerate specific matters that must be disclosed. The arbitrator must disclose specified relationships between the arbitrator and the parties to the arbitration, including involvement in prior arbitrations, an attorney-client relationship with any attorney involved in the arbitration, and any significant personal or professional relationship with a party or an attorney involved in the arbitration. (§ 1281.9, subd. (a)(3)-(6).) The arbitrator also must disclose 'any ground specified in Section 170.1 for disqualification of a judge,' as well as 'matters required to be disclosed by the ethics standards for neutral arbitrators adopted by the Judicial Council.' (§ 1281.9, subd. (a)(1), (2); see Cal. Rules of Court, Ethics Stds. for Neutral Arbitrators in Contractual Arbitration ….) The Ethics Standards require the disclosure of 'specific interests, relationships, or affiliations' and other 'common matters that could cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial.' (Ethics Stds., com. to std. 7.) Specific matters that must be disclosed include, for example, the arbitrator's financial interest in a party or the subject of the arbitration, the arbitrator's knowledge of disputed facts relevant to the arbitration, and the arbitrator's 'membership in any organization that practices invidious discrimination on the basis of race, sex, religion, national origin, or sexual orientation.'

states, in language mirroring section 1281.9, subdivision (a), that: "A person who is nominated or appointed must disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed arbitrator would be able to be impartial …." It then specifies particular relationships and interests that must be disclosed under this rule. (Ethics Stds., std. 7(d).) The catchall provision at the end of standard 7(d) states, in terms virtually identical to section 170.1 (see fn. 4, *ante*) that the arbitrator must disclose "[a]ny other matter that: [¶] (A) Might cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial; [¶] (B) Leads the proposed arbitrator to believe there is a substantial doubt as to his … capacity to be impartial …; or [¶] (C) Otherwise leads the arbitrator to believe that his … disqualification will further the interests of justice." (Ethics Stds., std. 7(d)(14).)

11.

(Ethics Stds., std. 7(d)(13); see *id*., std. 7(d)(9), (10), (12).)" (*Haworth*, *supra*, 50 Cal.4th at p. 381.)

The statutory scheme requires an arbitrator to make the disclosures at the very outset—within 10 calendar days of his or her proposed appointment (§ 1281.9, subd. (b)). After the disclosures are made, the parties would then have an opportunity to disqualify the arbitrator by serving a timely demand (§ 1281.91, subd. (b)(1) [disqualification based on disclosed matters must be requested within 15 calendar days after service of disclosure statement]). An arbitrator's disclosure obligations *continue* until the conclusion of the arbitration proceedings. (§ 1281.91, subd. (d).)[6] Standard 7(f) of the Ethics Standards clearly affirms: "An arbitrator's duty to disclose the matters described in subdivision[s] (d) and (e) of … standard [7] is a continuing duty, applying from service of the notice of the arbitrator's proposed nomination or appointment until the conclusion of the arbitration proceeding."

## B. Analysis of Disclosure Issue

Here, the purported conflict did not come within any of the specifically listed matters that must be disclosed under the above provisions. As the trial court correctly concluded, "the purported conflict [was] not a recognizable conflict under the conflict rules applicable to arbitrators," and EPW does not argue otherwise. EPW's sole contention is that the arbitrator's representation of a client in the federal action had to be disclosed under the general requirement that a neutral arbitrator must "disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the …

---

[6] Section 1281.91, subdivision (d), provides that if any ground specified in section 170.1 exists, a neutral arbitrator shall disqualify himself or herself upon the demand of any party made before the conclusion of the arbitration proceedings.

12.

arbitrator would be able to be impartial ….'" (§ 1281.9, subd. (a); see also Ethics Stds., std. 7(d) & § 170.1, subd. (a)(6)(A)(iii) [stating same general requirement]j.)[7]

In deciding whether disclosure is required under that standard, "[t]he question … is how an objective, reasonable person would view [the arbitrator's] ability to be impartial" under the circumstances. (*Haworth*, *supra*, 50 Cal.4th at p. 385.) "The test is an objective one—whether the facts might create an impression of possible bias in the eyes of the hypothetical reasonable person." (*Ceriale v. AMCO Ins. Co*. (1996) 48 Cal.App.4th 500, 506.) "An impression of possible bias in the arbitration context means that one could reasonably form a belief that an arbitrator was biased *for or against a party for a particular reason*." (*Betz v. Pankow* (1995) 31 Cal.App.4th 1503, 1511, italics added.)

In considering this question, we keep in mind that arbitrators often have dealings and experience in the legal or business community, and their familiarity with such matters is often the reason they were selected to serve; they are not expected to be free of business contacts or professional relationships in their particular field of practice. (*Nemecek & Cole v. Horn*, *supra*, 208 Cal.App.4th at pp. 646-647.) Judges and arbitrators, "'like all human beings, have widely varying experiences and backgrounds. Except perhaps in extreme circumstances, those not directly related to the case or the parties do not disqualify them.' [Citation.]" (*Haworth*, *supra*, 50 Cal.4th at p. 389.) The disclosure requirements are only intended to ensure the impartiality of the arbitrator, not to mandate disclosure of "all matters that a party might wish to consider in deciding whether to oppose or accept selection of an arbitrator." (*Id*. at p. 393.) Moreover, an overly broad interpretation of the appearance of partiality "could subject arbitration

---

[7]      "'Impartiality' entails the 'absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind.' [Citation.]" (*Haworth*, *supra*, 50 Cal.4th at p. 389.)

awards to after-the-fact attacks by losing parties searching for potential disqualifying information only after an adverse decision has been made." (*Id*. at pp. 394-395.) "'If the impression of possible bias is not to emasculate the policy of the law in favor of the finality of arbitration, the impression must be a reasonable one.' [Citation.]" (*Id*. at p. 394.)

Applying the reasonable person test to the matter before us, we fail to see how the relationship at issue would lead a reasonably objective person to doubt the arbitrator's ability to be impartial. There was no evidence or finding that either party to the federal action had any legal or financial interest to any of the parties to the arbitration or to the arbitrator. The two cases, and the parties involved, were entirely unrelated. The mere fact that the arbitrator provided legal representation to a client—the plaintiff in the federal action—while an attorney in the law firm representing EPW provided legal representation to one or more of the defendants in that same federal action does not by itself create a reasonable basis for doubting the arbitrator's ability to be impartial in the arbitration. Therefore, the trial court correctly concluded that the arbitrator was not required to disclose that matter. (See, e.g., *Luce, Forward, Hamilton & Scripps, LLP v. Koch* (2008) 162 Cal.App.4th 720, 734-735 [arbitrator was not required to disclose service on board of professional organization with the plaintiff's counsel, even if the defendants asserted they were uncomfortable with that relationship]; *Guseinov v. Burns* (2006) 145 Cal.App.4th 944, 959 [the arbitrator's prior service as uncompensated mediator on case handled by an attorney in the arbitration did not create impression of bias]; *Gonzales v. Interinsurance Exchange* (1978) 84 Cal.App.3d 58, 66 [friendly acquaintance between arbitrator and senior partner of a party's law firm insufficient to give impression of bias]; *Agri-Systems, Inc. v. Foster Poultry Farms*, *supra*, 168 Cal.App.4th at pp. 1139-1143 [affirming trial court's holding that prior representation by arbitrator's law firm of a company that was financially adverse to a party to arbitration

did not create reasonable doubt as to the arbitrator's ability to be impartial where the representation was attenuated and apparently unknown to arbitrator].)

Although what we have said above is sufficient to conclude the matter, we note that two additional factors in this case tend to further support our conclusion. First, the purported conflict in this case was somewhat attenuated by the fact that different attorneys from the PME law firm were involved in each matter: the individual attorney representing EPW in the arbitration was Douglas Thornton, but the individual attorney representing the defendants in the federal action was someone else, John Branch. Second, the parties and the arbitrator did not learn of the purported conflict until May 25, 2011, after the arbitration hearings were over and the arbitration process was relatively close to completion. On the record before us, these factors comport with our conclusion that a reasonably objective person learning of the alleged conflict, after consideration of all of the facts and circumstances, would not have an impression of possible bias or entertain a doubt about the arbitrator's ability to be impartial.

C.     Waiver

An additional ground for upholding the trial court's confirmation of the arbitration award and denial of EPW's request to vacate the award is that of waiver or forfeiture. The trial court's finding, supported by substantial evidence, was that EPW knew of the purported conflict on May 25, 2011, when Mr. Branch contacted the arbitrator to request an extension of time to respond to the federal action. "Upon learning of the purported failure to disclose, [EPW] did not file [its] petition to vacate the award under … section 1286.2; instead, they waited until … October 5, 2011." Implicitly, the trial court was emphasizing such facts to indicate a waiver on the part of EPW. We quite agree. A party who knows of a purported conflict, but unreasonably waits until after the arbitrator's award to bring it up should be found to have waived the matter. (See, e.g., *Fininen v. Barlow* (2006) 142 Cal.App.4th 185, 190-191 [motion to vacate award properly denied where a party to arbitration recognized arbitrator from a prior settled case, but the party

15.

failed to investigate or raise the issue until after the award was issued in favor of his opponents]; *Woolley v. Superior Court* (1937) 19 Cal.App.2d 611, 619 ["Courts must guard against the possibility of a party, who claims the trial judge is biased or prejudiced, refraining from raising that question, trusting to get a favorable verdict, and thereafter raise the question"]; *Caminetti v. Pac. Mutual L. Ins. Co*. (1943) 22 Cal.2d 386, 392 ["'It would seem … intolerable to permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware and thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not.'"]; cf. § 170.3, subd. (b)(2) [waiver prohibited as to certain grounds for disqualification not present here].)

### III.    Trial Court Properly Denied Request for Correction of Award

Section 1286.6 sets forth the grounds for correction of an arbitration award, which include the following:  "(a) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award; [¶] … [¶]  (c) The award is imperfect in a matter of form, not affecting the merits of the controversy."  The miscalculation, "to be evident, must appear *on the face* of the award [citation] or be so readily apparent from the documentation in the case that explanation by proofs is not necessary."  (*Severtson v. Williams Construction Co*. (1985) 173 Cal.App.3d 86, 94.)

In denying EPW's request for correction of the award, the trial court explained: "If there was an evident miscalculation of the figures, any such miscalculation has not been demonstrated by way of admissible evidence.  This court does not have the power to review the arbitrator's award and his reasoning used to arrive at that award in the guise of reviewing it for a miscalculation or imperfection that is not clear on its face or is demonstrated to the court by way of admissible evidence."  EPW contends the trial court erred because the award allegedly credited incorrect amounts for inventory and advances and used inconsistent dates for computing such amounts.  We reject EPW's argument.

16.

There is nothing on the face of the award or otherwise readily apparent that demonstrates there was an evident mathematical or calculation error. EPW is, instead, asking us to remedy the arbitrator's allegedly flawed reasoning and/or factual determinations—something we may not do. (*Moncharsh*, *supra*, 3 Cal.4th at p. 11.) We conclude the trial court correctly denied the request for a correction of the award.

## IV.    Motion for Sanctions

During the pendency of this appeal, Diamond filed a motion asking that we impose sanctions against EPW on the ground that EPW's appeal was allegedly frivolous or for the sole purpose of delay. (See *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649-650.) Diamond asserts that EPW's appeal was frivolous because of EPW's position that our standard of review herein is de novo. Contrary to Diamond's argument, however, EPW was essentially correct in regard to the appropriate standard of review. Additionally, we do not believe EPW's appeal concerning the disclosure issue was frivolous. Therefore, Diamond's motion for sanctions is denied.[8]

### DISPOSITION

The judgment confirming the arbitration award is affirmed. Costs on appeal are awarded to Diamond.

_____
Kane, Acting P.J.

WE CONCUR:

_____
Detjen, J.

_____
Franson, J.

---

[8]    In light of the court's decision denying sanctions, EPW's request to file documents in opposition to the motion for sanctions and Diamond's objection thereto are rendered moot.

17.