Filed 3/4/15  DeMartini v. DeMartini CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MICHAEL J. DEMARTINI et al., <br><br> Cross-complainants and Appellants, <br><br> v. <br><br> TIMOTHY P. DEMARTINI et al., <br><br> Cross-defendants and Respondents. | A140389 <br><br> (Marin County <br> Super. Ct. No. CIV085235) |

**INTRODUCTION**

The instant appeal concerns our order on remand in our prior opinion *DeMartini v. DeMartini* (June 28, 2013, A133277 & A134749 [nonpub. opn.] (*DeMartini*)).  In that opinion, we addressed the contention by cross-complainants Michael and Renate DeMartini that the trial court had erred in its partition of family-owned real estate holdings in Marin and Nevada Counties.  We concluded the trial court had properly exercised its discretion, including allowing for reimbursement to cross-defendants David and Nancy DeMartini for improvements made to a co-owned rental property that also housed their business.  However, we remanded the matter for the court to consider reducing the reimbursement by the difference between the rent paid by the business and the property's reasonable fair market rental value.[1]  Michael and Renate appeal from the trial court's order finding they failed to prove any offset or adjustment to the reimbursement award is required.  We affirm.

---

[1] By the time of trial, David owned a 75 percent share of the building, while his brothers Michael and Mark DeMartini (along with their spouses) each owned 12.5 percent.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The factual background of this matter is well known to the parties and we need not detail it here. The instant appeal concerns the commercial building at 102 Catherine Lane in Grass Valley. The building houses a pharmacy that is owned and operated by David and Nancy. The pharmacy business pays rent on the property. It paid $3,200 per month in rent from 2003 to the end of 2005, of which $2,400 went to David and Nancy, and $400 each went to Mark and Michael. Beginning in 2006, David increased the rent paid by the pharmacy to $4,800 per month but did not increase the amount paid to his two brothers. Over the years, David and Nancy spent approximately $135,000 for capital improvements to the pharmacy building. (*DeMartini, supra,* A133277 & A134749, at p. *5.)

In our earlier opinion, we issued the following order: "The case is remanded to the trial court with directions to reduce the amount of reimbursement awarded to cross-defendants by the difference between the amount of rent actually paid by David and Nancy and the reasonable market value of their occupancy or use of the property while the parties were co-owners of the Catherine Lane property, based on the evidence previously presented at trial—and only to the extent and for the duration that evidence of the rental value of the premises was presented—and to recalculate, to the extent necessary, the remaining varying percentage interests of each couple in the parcels upon modification of the amount of reimbursement." (*DeMartini, supra,* A133277 & A134749,at p. *16.) Our order also included the following language in a footnote: "For any period during which the parties did not present evidence of the fair market rental value of the property, no offset in the amount of reimbursement is necessary." (*Ibid*.)

After our remand issued, the trial court ordered the parties to furnish information derived from the earlier trial, including the dates on which each couple acquired record title to the pharmacy property, the actual rent paid by David and Nancy during any period of time when Michael and Renate's names appeared on record title to the property, and the reasonable rental value of the building during that same time period.

In their submission, David and Nancy claimed a reduction was not merited because "no direct evidence of the fair market rental value for the Catherine Lane property was presented at trial." They noted a reference to market rent appears in an appraisal prepared by Daniel Ketcham, but contended the rent figure was not probative as it was used only to calculate the property's value at a single point in time. They also noted the trial court already determined they had paid all of the property taxes and insurance for the pharmacy building, "two factors not considered in the number assigned for market rent within [Ketcham]'s appraisal."

Michael and Renate submitted portions of David's trial testimony, and alleged that the parties had "stipulated to a reasonable rate of $1.15 per square foot per month, triple net." They asserted this figure was "not limited by inclusive dates" and would be suitable for a five-year term with 3 percent annual increases. In their submission, they included a chart of proposed rental offsets based on various rental payment scenarios, including offsets supplemented with an interest rate of 10 percent.

On November 5, 2013, the trial court filed its order ruling Michael and Renate had failed to present competent evidence to support an equitable offset to David's and Nancy's award for capital expenditures. The court found "[t]he fair market rental value for 102 Catherine Lane on or about March 2010 was approximately $1.00 per square foot market [*sic*] 'modified gross.' " It also determined David and Nancy had paid all the property taxes and insurance, and had paid "significantly in excess of any reasonable established market value" while the parties were co-owners. This appeal followed.

## DISCUSSION

### I. *Failure To Request A Statement Of Decision*

Michael and Renate challenge the reasoning behind the trial court's ruling. They assert the court's order is "internally inconsistent and illogical" because (1) David and Nancy admitted they had paid only $0.87 per square foot since 2006, which is below the $1 per square foot figure the court found was the reasonable market value as of at least March 2010; (2) David admitted at trial that he had "shorted" his two brothers since 2006 by failing to pay them their proportionate share of the rent; and (3) David and Nancy

3

failed to pay $1 per square foot market rent between March 2010 and the date of the interlocutory judgment in June 2011.

Ordinarily, the trial court's judgment is presumed to be correct, and all intendments and presumptions are indulged in favor of its correctness. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) Upon a party's timely and proper request, Code of Civil Procedure section 632 requires a trial court to issue a statement of decision following "the trial of a question of fact by the court." The statement must explain "the factual and legal basis for [the court's] decision as to each of the principal controverted issues at trial . . . ." (Code Civ. Proc., § 632.) No statement of decision is required if the parties fail to request one. (*Agri-Systems, Inc. v. Foster Poultry Farms* (2008) 168 Cal.App.4th 1128, 1134 (*Agri-Systems*); see *Stermer v. Modiano Constr. Co.* (1975) 44 Cal.App.3d 264, 271.)

A party's failure to request a statement of decision when one is available has two consequences. First, the party waives any objection to the trial court's failure to make all findings necessary to support its decision. Second, the appellate court applies the doctrine of implied findings and presumes the trial court made all necessary findings supported by substantial evidence. (*Agri-Systems, supra,* 168 Cal.App.4th 1128 at p. 1135.) This doctrine "is a natural and logical corollary to three fundamental principles of appellate review: (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively proving error." (*Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 58.)

Here, the trial court's order is in the form of a memorandum opinion. "A memorandum opinion is not a decision. Although it may purport to decide issues in the case, it is merely an informal statement of the views of the trial judge. It does not constitute findings of fact." (*Taormino v. Denny* (1970) 1 Cal.3d 679, 684.) Although a court's comments may be valuable in illustrating the trial judge's theory, they may never be used to impeach the order or judgment. (*In re Marriage of Ditto* (1988) 206 Cal.App.3d 643, 646.) This is appropriate because "a court is not bound by its statement

4

of intended decision and may enter a wholly different judgment than that announced." (*Canal-Randolph Anaheim, Inc. v. Wilkoski* (1978) 78 Cal.App.3d 477, 494.) A request for a statement of decision allows the trial court to review its memorandum of intended decision and "to make . . . corrections, additions, or deletions it deems necessary or appropriate." (*Miramar Hotel Corp. v. Frank B. Hall & Co.* (1985) 163 Cal.App.3d 1126, 1129.) Michael and Renate failed to request a statement of decision and therefore waived on appeal any objection based on the trial court's failure to make all findings necessary to support the court's ruling. Accordingly, the only question before us is whether the record supports the finding that no offset to the reimbursement awarded to David and Nancy is required to equalize the rent amounts paid to Michael and Renate.

## II.     *Substantial Evidence Supports The Order*

Where an appellant challenges the sufficiency of the evidence, we must start with the presumption that the record contains evidence sufficient to support the judgment; it is the appellant's burden to demonstrate otherwise. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) The appellant's brief must set forth all of the material evidence bearing on the issue, not merely the evidence favorable to the appellant, and also must show how the evidence does not sustain the challenged finding, else the claim of insufficiency of the evidence is forfeited. (*Ibid.; Western Aggregates, Inc. v. County of Yuba* (2002) 101 Cal.App.4th 278, 290.) An appellant must also be mindful that the reviewing court does not have the power to reweigh the evidence, to consider the credibility of witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom. (*Huang v. Board of Directors* (1990) 220 Cal.App.3d 1286, 1294.) The test is "whether there is substantial evidence in favor of the respondent. If this 'substantial' evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment will be affirmed." (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 370, p. 427, italics omitted.)

The Ketcham appraisal was done on February 9, 2010. As part of the appraisal, Ketcham investigated recent leasing activity within the immediate and competitive commercial market. When adjusted to a common lease basis of modified gross, the

leases indicated a rental range of $0.85 to $1.72 per square foot. The most relevant comparable rents ranged from $0.94 to $1.10 per square foot. Based on these comparables and the specific attributes of the subject property, the estimated market rent was set at $1 per square foot per month. This figure was used as the basis of income projections contained in the analysis of the property's market value. It was not used to calculate the parties' entitlement to rental payments or offsets. The $1 per square foot market rent estimate was designated as "modified gross," meaning that the landlord passes through to the tenant increases in certain operating costs for the property, such as insurance.

An additional appraisal had been prepared by CBRE.[2] At trial, the parties had stipulated to use the values in the Ketcham appraisal to measure the market value of the property, which was valued at $675,000. The values in the CBRE report were not addressed at trial. Yet Michael and Renate erroneously asserted in their submission on remand that the parties had stipulated to evidence contained in the CBRE report. In the report, the following statement appears: "It was reported that the subject property located at 102 Catherine Lane is leased to a relative of the ownership on a verbal month-to-month basis for $400 per month.[3] The lease amount appears to be well below market and is considered 'pocket-to-pocket' and is given no reliance in determining market rent for the subject." However, it is undisputed that the total rent being paid during the time period relevant here was $4,800.

The CBRE report's market rent conclusions as to the pharmacy space showed comparable rates ranged from $1 to $1.23 per square foot. The report states that $1.15 per square foot per month "appears reasonable." However, this estimate appears to represent a composite of the rental rates for the pharmacy as well as for the office space

---

[2] The CBRE appraisal valued the fair market value of the property as of March 12, 2010 at $960,000.

[3] This statement was apparently based on Michael's representation that the monthly rent was $400 per month (the amount he and Renate received) as opposed to the actual rent, which was $4,800 per month.

located at 108 Catherine Lane. Thus, it does not appear to be an accurate estimate as to the pharmacy property itself. In any event, the parties did not stipulate to the CBRE report's figures at trial. We cannot say the trial court erred insofar as it relied on the $1 per square foot rate from the Ketchem report.

Michael and Renate also argue that the trial court ignored the undisputed evidence that David had "shorted" his siblings by at least $12,000 at the time of trial, based on his acknowledged failure to increase the $400 per month paid to them after he raised the rent in 2006. As David and Nancy note, this point was not raised with the trial court in Michael's and Rentate's submission filed on remand. It was their obligation to set forth this evidence in their submission if they wanted the court to consider it. The general rule of evidence that "a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting." (Evid. Code, § 500.) Having failed to direct the court's attention to this specific point, we cannot fault the trial court's failure to explicitly address it in its order on remand.

The trial court apparently relied on the figures in the Ketchem report, along with undisputed evidence that David and Nancy had paid property taxes and insurance on the property, in concluding that Michael and Renate failed to prove an offset was necessary. The court's ruling is supported by substantial evidence.

## DISPOSITION

The order is affirmed.

_____
Dondero, J.

We concur:


_____
Margulies, Acting P.J.


_____
Banke, J.

8