Filed 3/11/20

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| VICTROLA 89, LLC, | B295439 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC717254) |
| v. | |
| JAMAN PROPERTIES 8 LLC et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Elizabeth A. White, Judge. Vacated and remanded with directions.

Shoreline, Andrew S. Pauly and Andrew J. Haley for Defendants and Appellants.

June Babiracki Barlow, Neil Kalin and Jenny Li, as Amicus Curiae for California Association of Realtors on behalf of Defendants and Appellants.

Shumener, Odson & Oh, Betty M. Shumener, Staci M. Tomita, Benjamin L. Hicks and Benjamin P. Sosnick for Plaintiff and Respondent.

---

## INTRODUCTION

After respondent Victrola 89, LLC (Victrola) purchased a house (the Property) from appellant Jaman Properties 8, LLC (JP8), Victrola filed suit against JP8, appellant Jaman Properties, Inc. (JP), and their principal, appellant Michael Manheim (collectively, the Jaman Parties), among others, regarding allegedly undisclosed and unrepaired defects in the Property. Based on the real estate purchase agreement (the Agreement) between Victrola and JP8, the Jaman Parties moved to compel arbitration under the Federal Arbitration Act (FAA).[1]

The court denied the motion to compel arbitration, finding that the procedural provisions of the California Arbitration Act (CAA), rather than those of the FAA, applied to its ruling on the motion. Under section 1281.2,

---

[1]     The Agreement is a standard form created and distributed by the California Association of Realtors (CAR). CAR has filed an amicus curiae brief in support of the Jaman Parties.

subdivision (c), of the CAA (Section 1281.2(c)), a court may refuse to compel arbitration if "[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." (Code Civ. Proc., § 1281.2, subd. (c).) Because both the Jaman Parties and Victrola were parties to a pending court action (i.e., Victrola's lawsuit) with third-party defendants not required to arbitrate, the court found "a possibility of conflicting rulings on a common issue of law or fact" and exercised its discretion under Section 1281.2(c) to decline to enforce the arbitration provision of the Agreement.

On appeal, the Jaman Parties contend the court erred in finding the FAA did not apply to their motion to compel arbitration. Victrola counters that: (1) the court correctly found the CAA, not the FAA, applied; (2) most of the claims Victrola brought are not covered by the Agreement's arbitration clause; (3) Code of Civil Procedure section 1298.7 (Section 1298.7) exempts Victrola from arbitrating its construction defect claims; (4) JP and Manheim are not entitled to enforce the arbitration provision of the Agreement because they are not parties to the Agreement; and (5) the Jaman Parties are estopped from asserting the application of the FAA.

As discussed below, we find: (1) the parties incorporated the procedural provisions of the FAA into the Agreement; thus the court could not look to Section 1281.2(c)

3

to deny the Jaman Parties' motion; (2) the Agreement's arbitration clause encompasses all of Victrola's claims against the Jaman Parties; (3) the FAA preempts Section 1298.7 in this instance; and (4) JP and Manheim have standing to enforce the arbitration provision.  Because the trial court did not reach the claim of judicial estoppel, we remand to permit that court to adjudicate the issue.  Accordingly, we vacate the trial court's order denying the Jaman Parties' motion, and remand for the court to determine whether the Jaman Parties are judicially estopped from claiming the FAA's procedural provisions apply.

### STATEMENT OF RELEVANT FACTS

On November 11, 2016, Matthew S. Barrett and Kathy K. Barrett made an offer to buy the Property.[2]  The offer was made using a CAR form, and contained the following language under Paragraph 22.B:

> "Arbitration of Disputes: The Parties agree
> that any dispute or claim in Law or equity

---

[2]     Matthew S. Barrett and Kathy K. Barrett are the sole members of respondent Victrola.  In the Agreement, the parties agreed that "[v]esting of title to the Property shall be determined by Buyer during Escrow."  In the complaint, Victrola is defined as "Owner."  Though not in the record before us, we assume the parties determined that Victrola would hold title to the Property.  Nothing in the record or the parties' briefs suggests any party has contended Victrola is not bound by the Agreement, and we proceed under the assumption that it is.

4

arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration.  The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker.  The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator.  The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05.  In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure.  Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. **Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act.** . . ."  (Bolding added.)

"'NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE

5

GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL.  BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION.  IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE.  YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.'"

Additionally, paragraph 29 of the Agreement stated: "Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California."

After Victrola's initial offer, JP8 and Victrola each made two counteroffers, culminating in an agreement executed on January 7, 2017, for the Barretts or their designee to purchase the Property.  Each of the counteroffers incorporated the previous offer or counteroffer.  Escrow closed on February 17, 2017.

On August 8, 2018, Victrola filed a complaint against JP8, JP, Manheim, T. Engineering Group, Inc.,

6

Harris-Anderson, and Harms Concrete Construction, Inc. The gravamen of the complaint was that JP8 and its affiliates, principals, and contractors, deceived Victrola about both the initial condition of the Property and the repairs of the Property's defects.

On November 1, 2018, the Jaman Parties moved to compel arbitration and stay the action. According to the notice of motion, the motion was "brought under the Federal Arbitration Act (**'FAA'**), 9 U.S.C. §§ 3-4." In the memorandum of points and authorities accompanying the motion, when arguing the court should stay the action as to any claims or parties not subject to arbitration, the Jaman Parties relied on section 1281.4 of the Code of Civil Procedure (Section 1281.4) (i.e., a section of the CAA), as well as *Twentieth Century Fox Film Corp. v. Superior Court* (2000) 79 Cal.App.4th 188 (*Twentieth Century Fox*), a case interpreting Section 1281.4. (*Twentieth Century Fox, supra,* at 192.)

On January 18, 2019, the court denied the motion, finding the CAA, not the FAA, applied. Specifically, the court found that "the question is not whether the Federal Arbitration Act ('FAA') 'applies' to this Agreement, but rather, whether the parties expressly incorporated the FAA's *procedural* provisions into the Agreement. If the parties did not, the Court is not precluded from exercising its discretion under CCP § 1281.2(c), because § 1281.2 is not preempted by the FAA." The court relied principally on *Valencia v. Smyth* (2010) 185 Cal.App.4th 153. There, the court held the

parties had agreed to be bound by the CAA, notwithstanding language in the arbitration agreement that "**Interpretation** of this agreement to arbitrate shall be governed by the Federal Arbitration Act." (*Valencia v. Smyth, supra*, 185 Cal.App.4th at 159, emphasis added.) Recognizing the provision in the instant agreement stated "'**Enforcement** of this agreement [to arbitrate] shall be governed by the Federal Arbitration Act'" (emphasis added), the court characterized the change in wording as "a distinction without a difference." It concluded the CAA applied, and it was thus free to determine under Section 1281.2(c) whether to decline to compel arbitration. The court found that because the other defendants named in Victrola's complaint had not agreed to arbitrate, there was "a possibility of conflicting rulings on a common issue of law or fact regarding the Jaman Defendants' liability . . . ." The court then exercised its discretion under Section 1281.2(c) to decline to enforce the arbitration agreement between Victrola and the Jaman Parties.

On January 24, 2019, the Jaman Parties appealed the court's denial of their motion. The Jaman Parties do not argue the trial court abused its discretion in its application of Section 1281.2(c), only that the court erred in applying the section in the first place.

## DISCUSSION

### A. *The FAA Governs Whether the Agreement's Arbitration Provision Should Be Enforced*

"In accordance with choice-of-law principles, the parties may limit the trial court's authority to stay or deny arbitration under the CAA by adopting the more restrictive procedural provisions of the FAA." (*Valencia v. Smyth*, *supra*, 185 Cal.App.4th at 157.) "[T]he FAA's *procedural* provisions (9 U.S.C. §§ 3, 4, 10, 11) do not apply unless the contract contains a choice-of-law clause expressly incorporating them." (*Id.* at 174.) "[T]he question is not whether the parties adopted the *CAA*'s procedural provisions: The state's procedural statutes (§§ 1281.2, 1290.2) apply by default because Congress intended the comparable FAA sections (9 U.S.C. §§ 3, 4, 10, 11) to apply in federal court. The question, therefore, is whether the parties expressly incorporated the *FAA*'s procedural provisions into their agreements." (*Id.* at 177; see also *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 387, 394 ["Our opinion does not preclude parties to an arbitration agreement to expressly designate that any arbitration proceeding should move forward under the FAA's procedural provisions rather than under state procedural law" (italics omitted)].)

"The question of whether the Agreement incorporated the FAA's procedural provisions, thereby eliminating the trial court's authority under section 1281.2(c), 'is a question

9

of law involving interpretation of statutes and the contract (with no extrinsic evidence). We therefore apply a de novo standard of review.'" (*Valencia v. Smyth, supra,* 185 Cal.App.4th at 161-162.)

### 1. *The FAA Was Incorporated into the Agreement*

While no party has cited a case analyzing the meaning of the sentence "**Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act**," and we have found none, we conclude the parties intended to incorporate the FAA with respect to compelling arbitration. As set forth below, previous cases have held that when an arbitration agreement provides that its "enforcement" shall be governed by California law, the CAA governs a party's motion to compel arbitration. It follows that when an agreement provides that its "enforcement" shall be governed by the FAA, the FAA governs a party's motion to compel arbitration.

By its terms, the FAA "provides for the enforcement of arbitration provisions in any contract evidencing a transaction involving interstate commerce." (*Mount Diablo Medical Center v. Health Net of Cal., Inc.* (2002) 101 Cal.App.4th 711, 717 (*Mount Diablo*).) But agreements to have such enforcement governed by state rules are enforceable. (*Volt Info. Scis. V. Bd. of Trs.* (1989) 489 U.S. 468, 479 (*Volt*) ["Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to

10

structure their arbitration agreements as they see fit.  Just as they may limit by contract the issues which they will arbitrate, [citation] so too may they specify by contract the rules under which that arbitration will be conducted. Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward"].)  In *Volt*, the United States Supreme Court held that the FAA did "not prevent application of Cal. Civ. Proc. Code Ann. § 1281.2(c) to stay arbitration where, as here, the parties have agreed to arbitrate in accordance with California law." (*Volt*, *supra*, at 477.)

In *Mount Diablo*, the arbitration agreement involved interstate commerce, and thus the FAA presumptively applied.  (*Mount Diablo*, *supra*, 101 Cal.App.4th at 717 & fn. 5.)  However, the arbitration agreement contained a choice-of-law provision, stating the agreement's "'validity, construction, interpretation and enforcement'" would be governed by California law.  (*Id.* at 716.)  The court found this provision compelled application of state procedural law. Specifically, the court held that the "explicit reference to enforcement reasonably includes such matters as whether proceedings to enforce the agreement shall occur in court or before an arbitrator." (*Id.* at 722.)  In so holding, the court noted that "Chapter 2 (in which § 1281.2 appears) of title 9 of part [3] of the California Code of Civil Procedure is

11

captioned 'Enforcement of Arbitration Agreements.'" (*Ibid.*) From this, the court concluded that "[a]n interpretation of the choice-of-law provision to exclude reference to this chapter would be strained at best." (*Ibid.*)

In *Gravillis v. Coldwell Banker Residential Brokerage Co.* (2006) 143 Cal.App.4th 761 (*Gravillis*), the Court of Appeal considered an arbitration provision in a preprinted real estate purchase agreement prepared by CAR. (*Gravillis*, *supra*, at 768.) The agreement contained a provision stating: "'By initialing in the space below you are agreeing to have any dispute arising out of the matters included in the "Arbitration of Disputes" provision decided by neutral arbitration *as provided by California law . . . .* If you refuse to submit to arbitration after agreeing to this provision, *you may be compelled to arbitrate* under the authority of the *California Code of Civil Procedure*.' (Italics added, all capitals omitted.)" (*Id.* at 784.) Defendants moved to compel arbitration under the FAA. (*Gravillis*, *supra*, at 769.) The Court of Appeal held that "[b]ecause the Agreement provides that a motion to compel arbitration is to be decided under California law, we need not decide if the FAA applies," and directed the trial court to determine whether to stay or deny arbitration under Section 1281.2(c). (*Gravillis*, at 784.) Notably, though the parties disagreed whether the agreement in *Gravillis* involved interstate commerce, it contained no language purporting to incorporate the FAA.

In *Valencia v. Smyth*, the court considered another arbitration provision contained in a CAR form.  (*Valencia v. Smyth, supra*, 185 Cal.App.4th at 156.)  This provision was identical to that in *Gravillis*, but with "the addition of a single sentence: '*Interpretation* of this agreement shall be governed by the [*FAA*].'  (Italics added.)"  (*Id.* at 157.)  The Court of Appeal characterized the question as "whether this additional language warrants a different conclusion than the one we reached in *Gravillis*."  (*Id.* at 176.)  The court concluded it did not, "because the CAA and the FAA employ the same rules of contract interpretation."  (*Ibid.*)  The court held that "*interpreting* an arbitration agreement in accordance with the FAA does not accomplish the . . . goal of displacing section 1281.2(c)."  (*Id.* at 178.)  The court explained:

> "In *Mount Diablo, supra*, 101 Cal.App.4th 711, the choice-of-law provision stated, "'The validity, construction, interpretation and enforcement of this Agreement shall be governed by the laws of the State of California'" (*id.* at p. 716).  *Mount Diablo* relied in large part on the provision's 'explicit reference' to 'enforcement' in concluding the CAA's procedural provisions applied.  (See *Mount Diablo, supra*, 101 Cal.App.4th at 722, 724.)  We do not read *Mount Diablo* to suggest

13

that an explicit reference to 'interpretation,' by itself, would determine the applicable procedural law." (*Valencia v. Smyth, supra,* at 179.)[3]

If, as the courts in *Mount Diablo* and *Valencia v. Smyth* held, contracting parties' explicit reference to "enforcement" under California law required the trial court to consider any motions to compel arbitration under the CAA, it follows that the instant parties' reference to "enforcement" under the FAA required the court to consider the Jaman Parties' motion to compel arbitration under the FAA.

### 2. *Victrola's Contrary Arguments Are Unpersuasive*

#### (a) *Incorporating the FAA Is Not Limited to Enforcing an Arbitration Award*

Victrola argues that "Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act"

---

[3] In their opening brief, the Jaman Parties note: "What happened next [after the *Valencia v. Smyth9* decision] came as a surprise to no one: CAR revised its form language to substitute the magic language ('enforcement') for the deficient language ('interpretation')."  CAR and Victrola agree with this sequence of events, but Victrola disputes whether CAR's substitution sufficiently "displace[d] the CAA procedural provisions."

refers "only to post-arbitration procedures – i.e., enforcement of any judgment resulting from arbitration." The words used to incorporate the FAA in the Agreement are not susceptible to Victrola's interpretation. We need look no further than our own Code of Civil Procedure for confirmation: Chapter 2 of Title 9 of Part 3 is entitled "<u>Enforcement of Arbitration Agreements</u>" (underline added) and contains provisions (§§1281-1281.99) relating to how arbitration agreements are enforced. (See, e.g., Code Civ. Proc., § 1281.2 ["On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists"].) A separate chapter -- Chapter 4 of Title 9 of Part 3 -- is entitled "<u>Enforcement of the Award</u>" (underline added) and contains provisions (Code Civ. Proc., §§ 1285-1288.8) pertaining to the enforcement of an arbitration award. (See, e.g., Code Civ. Proc., § 1285 ["Any party to an arbitration in which an award has been made may petition the court to confirm, correct or vacate the award"].) "Enforcement of this agreement to arbitrate" does not and cannot mean "Enforcement of the arbitration award that may result from an arbitration undertaken pursuant to this agreement to arbitrate."

**(b)** ***References to California Law Do Not Override the Agreement's Directive That Its Enforcement Be Governed by the FAA***

Pointing to the Agreement's numerous references to California law, Victrola argues "the arbitration provision in the Purchase Agreement reiterates that California law applies to substantive and procedural issues . . . ." Specifically, Victrola points out that paragraph 22.B provides that: (1) the parties "shall have the right to discovery in accordance with Code of Civil Procedures §1283.05" but "[i]n all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure"; and (2) by initialing, the parties agree to arbitration "as provided by California law" and that if a party refuses to arbitrate it "may be compelled to arbitrate under the authority of the California Code of Civil Procedure." As explained below, these references to California law do not override the Agreement's provision that "Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act."[4]

---

[4] Victrola also attaches significance to paragraph 29 of the agreement, which contained the language that "[e]xcept as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California." This language does not help Victrola because the agreement in fact "otherwise specified."

The parties were free to agree that discovery would be conducted in accordance with Code of Civil Procedure section 1283.05.  Their choice does little to inform us about what law the parties intended to apply when deciding whether the arbitration agreement should be enforced.  Similarly, a directive that arbitration shall be "conducted" in accordance with the CAA in all other respects has no bearing on the law that should be used to determine whether arbitration is required.  (*Warren-Guthrie v. Health Net* (2000) 84 Cal.App.4th 804, 816, overruled on another point in *Cronus Investments, Inc. v. Concierge Services*, *supra*, 35 Cal.4th at 393, fn. 8 ["Agreement to apply California contractual arbitration law is expressly limited to that law which bears on how the arbitration shall be conducted, as distinguished from agreeing that the plan shall be governed by California law for all purposes, including the determination . . . whether or not arbitration is required"]; accord, *Gravillis, supra*, 143 Cal.App.4th at 784, fn. 4 ["The language in the Agreement that the '*arbitration* shall be *conducted* in accordance with [the CAA]' (italics added) does not indicate, by itself, that the *arbitration provision* should be governed by California law"].)

Victrola is correct that arbitration agreements providing for disputes to be "'decided by neutral arbitration as provided by California law,'" and informing a party that it "'may be compelled to arbitrate under the authority of the California Code of Civil Procedure,'" have previously been held to mean that enforcement of the agreement shall be

17

decided under California law (see, e.g., *Gravillis*, *supra*, 143
Cal.App.4th at 784), but only in the absence of an express
proviso that "Enforcement of this agreement to arbitrate
shall be governed by the [FAA]." "Under well-established
principles of contract interpretation, when a general and a
particular provision are inconsistent, the particular and
specific provision is paramount to the general provision."
(*Kashmiri v. Regents of University of California* (2007) 156
Cal.App.4th 809, 834.) Thus, the Agreement's specific
directive that its enforcement will be governed by the FAA is
paramount to any general statement that disputes will be
decided as provided by California law.

Further, that a party "may" be compelled to arbitrate
under the CAA is permissive, whereas the sentence that
enforcement of the agreement "shall" be governed by the
FAA is mandatory. "The whole of a contract is to be taken
together, so as to give effect to every part, if reasonably
practicable, each clause helping to interpret the other." (Civ.
Code, § 1641.) Taken as a whole, the Agreement's references
to California law fail to override its explicit provision that
enforcement of the Agreement is to be governed by the FAA.[5]

_____

[5] We note additionally that Code of Civil Procedure section
1298, subdivision (c) (Section 1298(c)), mandates the quoted
language that a party agree to have disputes "decided by neutral
arbitration as provided by California law" and that a party "may
be compelled to arbitrate under the authority of the California
Code of Civil Procedure." The Jaman Parties argue the FAA
preempts Section 1298(c) because "[i]f the mere act of inserting a
(*Fn. is continued on the next page.*)

18

### (c) *It Is Irrelevant Whether the Initialed Portion of the Agreement Mentioned the FAA*

Victrola observes that "[t]he portion of the arbitration provision that Respondent initialed and agreed to is the portion in all capital letters – i.e., 'BY INITIALING IN THE SPACE BELOW, YOU ARE AGREEING TO . . . NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW . . .' – not the portion referencing the FAA." Victrola argues that "[t]he purpose of requiring a purchaser to initial an arbitration provision is to ensure that he/she/it understands what types of claims will and will not be subject to arbitration and what rules will apply to that determination, in large part due to the importance of a right to a jury trial." We are unpersuaded that the lack of initials directly under the sentence referencing the FAA renders it meaningless.

First, Victrola has provided no authority holding that a party's lack of initials directly under a sentence incorporating the FAA renders such incorporation ineffective. In fact, requiring such initials would arguably

_____

statutorily required consumer notice into an arbitration contract is interpreted as an election of California procedural law, that directive inherently conflicts with the FAA and flouts a contracting party's freedom to choose the FAA's procedural rules." We do not so construe Section 1298(c). Indeed, Victrola admits that "CCP § 1298 does not prohibit the application of the FAA's procedural provisions where such provisions are expressly incorporated."

violate California law, which provides that certain language must appear "[i]mmediately before the line or space provided for the parties to indicate their assent or nonassent to the arbitration provision described in subdivision (a) or (b), and immediately following that arbitration provision . . . ." (Code Civ. Proc., § 1298, subd. (c).)  Had the Agreement required the parties to initial immediately after the sentence in question, it would arguably have violated the requirements of Section 1298(c), because the requisite language would not have appeared "[i]mmediately before the line or space provided for the parties to" initial or "immediately following th[e] arbitration provision."

Second, the paragraph immediately preceding the parties' initials expressly stated the party was agreeing to arbitrate matters "included in the 'Arbitration of Disputes' provision."  The "Arbitration of Disputes" provision appeared directly above this paragraph and both described what claims would be arbitrated and specified that "[e]nforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act."  Victrola's concern that parties will be unaware of what law governs the enforcement of such agreements is unfounded.

### (d)  *Arbitration Is Favored*

Finally, Victrola argues that "[a]ny ambiguity in the terms of [the] arbitration agreement (*e.g.*, whether the FAA or CAA applies) must be interpreted against Appellants" because "ambiguities are interpreted against the party that

20

caused the ambiguity." Victrola further contends, "[h]ere, the contract was selected by Appellants who occupied superior bargaining position." But Victrola's complaint expressly alleges that Victrola "originally offered to purchase the Property on November 11, 2016" and notes the agreement to purchase the Property is made up of the "California Residential Purchase Agreement and Joint Escrow Instructions, dated November 11, 2016" and several counteroffers. There is no allegation or evidence in the record that JP8 compelled Victrola to use the CAR form to make its offer, nor does any evidence support Victrola's argument that JP8 was in a "superior bargaining position." Indeed, that each side made two counteroffers suggests that each exercised leverage in the negotiations.

Moreover, "the Legislature has expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' [Citations.] Consequently, courts will "'indulge every intendment to give effect to such proceedings.'"" (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.) As our Supreme Court has concluded: "Any doubts or ambiguities as to the scope of the arbitration clause itself should be resolved in favor of arbitration." (*Cronus Investments, Inc. v. Concierge Services, supra*, 35 Cal.4th at 386.)

**B.** *Unless the Jaman Parties Are Estopped, Victrola Must Be Compelled to Arbitrate Its Claims Against Them*

Aside from its contention that the court correctly applied Section 1281.2(c), Victrola proffers several other arguments regarding why it should not be required to arbitrate its disputes with the Jaman Parties. Though the trial court did not rule on these grounds, we nevertheless address them as alternative bases for affirming the trial court's denial of the motion to compel arbitration. (See, e.g., *Muller v. Fresno Community Hospital & Medical Center* (2009) 172 Cal.App.4th 887, 906-907 ["It is the ruling, and not the reason for the ruling, that is reviewed on appeal"].) We note additionally that, with the exception of judicial estoppel addressed below in subsection 4, the standard of review on each issue is de novo.

**1.** *JP and Manheim Have Standing to Enforce the Arbitration Provision of the Agreement*

"The determination of standing to arbitrate as a party to the contractual arbitration agreement is a question of law . . . ." (*Valley Casework, Inc. v. Comfort Construction, Inc.* (1999) 76 Cal.App.4th 1013, 1017, citing *Unimart v. Superior Court* (1969) 1 Cal.App.3d 1039, 1045-1047.) "As a general matter, only signatories to an arbitration agreement may enforce it." (*Rowe v. Exline* (2007) 153 Cal.App.4th 1276, 1284.) "However, in many cases, nonparties to arbitration

agreements are allowed to enforce those agreements where there is sufficient identity of parties." (*Valley Casework, Inc. v. Comfort Construction, Inc.*, *supra*, at 1021.)

Victrola argues that "even if Respondent [Victrola] is compelled to arbitrate with Seller [JP8], Respondent should not be required to arbitrate with Designer [JP] or Manheim, as Respondent did not agree to arbitrate with either of them." Victrola further argues that "[d]espite Appellants' contention that the Trial Court ruled Respondent must arbitrate with Designer and Manheim under an equitable estoppel theory, the Trial Court made no such ruling." Rather, as Victrola notes, the trial court stated that it "'assumes that Jaman Properties, Inc. and Michael Manheim may enforce the arbitration agreement as non-signatories based upon an equitable estoppel argument,'" citing *DMS Services, Inc. v. Superior Court* (2012) 205 Cal.App.4th 1346, 1354.

JP and Manheim counter that because Victrola alleged them to be alter egos of JP8, "they are entitled to enforce the agreement to arbitrate given that Respondent has elected to sue them for claims arising out of that agreement." As explained below, we conclude that JP and Manheim have standing to enforce the Agreement's arbitration provision under an equitable estoppel theory.

"Under [the] doctrine [of equitable estoppel], as applied in 'both federal and California decisional authority, a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the

23

causes of action against the nonsignatory are "intimately founded in and intertwined" with the underlying contract obligations.'" (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 706, quoting *Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262, 271.) "'By relying on contract terms in a claim against a nonsignatory defendant, even if not exclusively, a plaintiff may be equitably estopped from repudiating the arbitration clause contained in that agreement.'" (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.*, *supra*, at 706, quoting *Boucher v. Alliance Title Co*, *supra*, at 272.) "Where the equitable estoppel doctrine applies, the nonsignatory has a right to enforce the arbitration agreement." (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.*, at p. 706.)[6]

Victrola names JP and Manheim in seven of its nine causes of action (all but the first and third). All such causes of action are "intimately founded in and intertwined" with the Agreement. Specifically:

- In the second cause of action ("Violations of Title VII of the California Civil Code"), Victrola alleges:

---

[6] "Even if the FAA applies, the question whether a contract containing an arbitration provision can be enforced by or against nonparties to the contract is governed by state law principles. [Citation.] In any event, for purposes of equitable estoppel, California and federal law are identical. [Citations.]" (*DMS Services, LLC v. Superior Court*, *supra*, 205 Cal.App.4th at 1353, fn. 3.)

"As a direct and proximate result of Defendants' material breaches of the <u>Purchase Agreement</u>, the Warranty, the implied covenant of good faith and fair dealing, and Title 7 of the California Civil Code, Owner has sustained damages, the precise amount of which will be established according to proof at trial."  (Underline added.)

- In the fourth cause of action ("Breach of Warranty"), Victrola alleges: "Pursuant to the express terms of the <u>Purchase Agreement</u>, the Warranty and Title 7 of the California Civil Code, Jaman [defined in the complaint as JP8, JP, and Manheim] expressly warranted that Seller would sell the Property as if it were a new construction . . . ."  (Underline added.)  "Defendants breached their express and implied warranties to Owner because the work performed was not free from defect as alleged above."

- In the fifth cause of action ("Fraudulent Concealment"), Victrola alleges JP and Manheim (among others) intentionally concealed the defects "to deceive Owners into purchasing the Property . . . ."  A similar allegation is made in the sixth cause of action ("Fraudulent Misrepresentation").

- The seventh cause of action ("Negligent Misrepresentation") also alleges JP and Manheim (among others) told Victrola that certain portions of the Property were without defects when they had no reason to believe this to be true.

- The eighth cause of action ("Fraudulent Inducement") alleges JP and Manheim (among others) lied to Victrola to induce Victrola to waive a $3,000 per day fee accruing due to the failure to timely repair the Property's defects.

- The ninth cause of action ("Negligence") alleges the "[n]on-[s]eller [d]efendants" (i.e., all defendants but JP8) breached their duty of care to Victrola by failing to construct/repair the Property ipn a good and workmanlike manner.

These causes of action are all intertwined with the Agreement and the obligations found therein. Accordingly, JP and Manheim have standing to enforce the Agreement.

### 2. *The FAA Preempts Section 1298.7*

Victrola argues "[p]ursuant to CCP § 1298.7, Respondent is not required to arbitrate its construction defect claims." As discussed above, however, because enforcement of the arbitration agreement is governed by the FAA, Section 1298.7 is preempted.

"[F]ederal preemption presents a pure question of law." (*Farm Raised Salmon Cases* (2008) 42 Cal. 4th 1077, 1089, fn. 10.) "The FAA's displacement of conflicting state law is 'now well-established,' *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 272, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995), and has been repeatedly reaffirmed, see, e.g., *Buckeye* [*Check Cashing, Inc. v. Cardegna*], 546 U.S. [440], at 445-446

26

[(2006)], 126 S. Ct. 1204, 163 L. Ed. 2d 1038; *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 684-685, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996); *Perry v. Thomas*, 482 U.S. 483, 489, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987)." (*Preston v. Ferrer* (2008) 552 U.S. 346, 353.) "[A] state procedural statute or rule that frustrated the effectuation of section 2 [of the FAA]'s central policy would, where the federal law applied, be preempted by the [FAA]." (*Rosenthal v. Great Western Fin Securities Corp.* (1996) 14 Cal.4th 394, 408.)

"'[T]he FAA pre-empts state laws which "require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."'" (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 235, quoting *Volt, supra*, 489 U.S. at 478.) "One of the consequences of the FAA's applicability is its effect on Code of Civil Procedure section 1298.7, which allows a purchaser to pursue a construction and design defect action against a developer in court, even when the parties have signed a real property purchase and sale agreement containing an arbitration clause. . . . [T]he FAA would preempt its application here because it discriminates against arbitration." (*Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC* at 235, fn. omitted; see also *Basura v. U.S. Home Corp.* (2002) 98 Cal.App.4th 1205, 1212 ["[S]ection 1298.7 directly conflicts with section 2 of the FAA because the California statute is a state law applicable only

27

to arbitration agreements, allowing a purchaser to pursue a construction and design defect action against a developer in court, despite having signed an agreement to convey real property containing an arbitration clause"].)

Victrola does not deny that the FAA may preempt Section 1298.7, but contends the FAA is inapplicable because the Jaman Parties failed to submit evidence that the parties' dealings involved interstate commerce.[7] But the presence of interstate commerce is not the only manner under which the FAA may apply. As discussed above, the parties may also voluntarily elect to have the FAA govern enforcement of the Agreement, as they did here. This incorporation of the FAA prevents Victrola from using Section 1298.7 as an escape hatch from the parties' agreement to arbitrate.

### 3. *The Scope of the Arbitration Provision Covers Victrola's Claims Against the Jaman Parties*

"We review the scope of an arbitration provision de novo when, as here, that interpretation does not depend on conflicting extrinsic evidence." (*Lindemann v. Hume* (2012) 204 Cal.App.4th 556, 570, fn. 11.) "In light of California's strong public policy favoring arbitration as a method of

---

[7] The Jaman Parties argue that "the construction and sale of a $22 million home is so massive that it 'involves interstate commerce' so as to trigger Section 2 of the FAA." While the inference may be correct, the Jaman Parties presented no evidence to support it.

28

dispute resolution, '[c]ourts should indulge every intendment to give effect to such proceedings (*Lewsadder v. Mitchum, Jones & Templeton, Inc.* [(1973)] 36 Cal.App.3d 255, 259 [111 Cal. Rptr. 405]) and order arbitration unless it can be said with assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. (*Retail Clerks Union, Local 775 v. Purity Stores, Inc.* [(1974)] 41 Cal.App.3d 225, 231 [116 Cal. Rptr. 40].)' (*Pacific Inv. Co. v. Townsend* (1976) 58 Cal.App.3d 1, 9–10 [129 Cal. Rptr. 489].) Hence, any reasonable doubt as to whether a claim falls within the arbitration clause is to be resolved in favor of arbitration. (*Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 687 [99 Cal. Rptr. 2d 809].)" (*Villacreses v. Molinari* (2005) 132 Cal.App.4th 1223, 1229.) "The party opposing arbitration has the burden of demonstrating that an arbitration clause cannot be interpreted to require arbitration of the dispute." (*Rice v. Downs* (2016) 248 Cal.App.4th 175, 185.)

Here, the clause in question covers "any dispute or claim in Law or equity arising between [buyer and seller] out of this Agreement or any resulting transaction . . . ." The "resulting transaction" was Victrola's purchase of the Property. Victrola's claims against the Jaman Parties concern the defects in the construction of the Property, along with the defendants' alleged deceit regarding those defects in order to induce Victrola to purchase the Property. As such, they arise out of the Agreement and the resulting transaction.

Victrola argues that because "the arbitration provision here is narrow, it applies only to contract issues, like breach of the Purchase Agreement, and it excludes Respondent's fraud and negligence claims." In support, Victrola cites *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.* (9th Cir. 1994) 42 F.3d 1292 (*Tracer*) for the proposition that "an arbitration clause that covered disputes 'arising under' an agreement, but omitted reference to claims 'relating to' an agreement, covered only those disputes 'relating to the interpretation and performance of the contract itself.'" (*Id.* at 1295.) But when an agreement provides that the parties are to arbitrate "'"any controversy . . . arising out of"'" an agreement, "[t]he issue is not resolved simply by determining whether the arbitration clause is narrow or broad, whether the arbitration clause *could* encompass tort claims, or even whether the claims in issue sound in tort, not contract. The issue is whether the particular claims in issue are controversies 'arising out of'" the agreement. (*Rice v. Downs*, *supra*, 248 Cal.App.4th at 186, 187.)

Here, the question is whether Victrola's claims arise "'out of this Agreement or any resulting transaction.'" Victrola cites cases analyzing whether claims arose out of, arose under, or arose from various agreements. None is relevant to our analysis, because none analyzed whether the claims arose out of the transaction resulting from the

30

agreement. [8] Given that Victrola's claims all center around the defects in the Property -- purchased as a result of the Agreement -- and the alleged misrepre-sentations and concealments surrounding the purchase transaction, we conclude the claims arise out of the "Agreement or any resulting transaction," and are thus within the scope of the arbitration provision.

---

[8] *Cobler v. Stanley, Barber, Southard, Brown & Associates* (1990) 217 Cal.App.3d 518 is inapposite. The case did not address whether a non-contract claim was within the scope of an arbitration clause providing for arbitration "'arising from this Agreement,'" but whether any cause of action supporting an award of damages for emotional distress was ever submitted to the arbitrator. (*Id.* at 531-532; see *id.* at 531 ["Therefore, the only basis for the emotional distress damages award must have been in any tort issues properly submitted to the arbitrator"].) The court did not hold no such tort issues could have been submitted, only that none were. (*Id.* at 532.)

The federal cases cited by Victrola are also unhelpful. First, "[t]he decisions of the Ninth Circuit Court of Appeals . . . are not binding on us." (*Roskind v. Morgan Stanley Dean Witter & Co.* (2000) 80 Cal.App.4th 345, 355.) Second, the cited cases address whether disputes arose out of or from certain agreements, not whether those disputes arose out of or from the transactions resulting from those agreements. (*Tracer, supra,* 42 F.3d 1292, 1294-1295; *Cape Flattery Ltd. v. Titan Mar., LLC* (9th Cir. 2011) 647 F.3d 914, 916-917, 924.)

31

### 4. *We Remand to the Trial Court for a Determination Whether the Jaman Parties Are Judicially Estopped from Asserting Application of the FAA*

Finally, Victrola argues that "Appellants should be estopped from asserting the FAA applies because Appellants have successfully contended that C.C.P. § 1281.4, a procedural provision of the CAA, applies." Judicial estoppel "prohibits a party from asserting a position in a legal proceeding that is contrary to a position he or she successfully asserted in the same or some earlier proceeding." (*Owens v. County of Los Angeles* (2013) 220 Cal.App.4th 107, 121.) "The elements of judicial estoppel are '(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.'" (*Ibid.*, quoting *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183.)

"The determination of whether judicial estoppel can apply to the facts is a question of law reviewed de novo, i.e., independently." (*Blix Street Records, Inc. v. Cassidy* (2010) 191 Cal.App.4th 39, 46.) However, "[e]ven if the necessary elements of judicial estoppel are satisfied, the trial court still

has discretion to not apply the doctrine." (*Owens v. County of Los Angeles, supra*, 220 Cal.App.4th at 121.)

When the Jaman Parties filed the motion to compel arbitration, they argued the court "should compel arbitration of the claims involving the Jaman Defendants pursuant to the FAA," but also argued the court "should stay the litigation until the arbitration is completed," citing Section 1281.4 and *Twentieth Century Fox, supra*, 79 Cal.App.4th 188, a case interpreting Section 1281.4. When they filed a second motion to stay the case until the court could hear their motion to compel arbitration, they again invoked Section 1281.4, but made no mention of the FAA. The court granted the motion to stay.

Victrola argues that all five elements of judicial estoppel are therefore met: (1) "Appellants initially claimed the CAA's procedural provisions applied to the arbitration provision, but now they claim that the FAA applies"; (2) "these positions were taken in the same action"; (3) "Appellants were successful in asserting they were entitled to a stay pursuant to the CAA"; (4) "the two positions are inherently inconsistent as the CAA and FAA's procedural provisions cannot both apply"; and (5) "the first position was not taken out of ignorance, fraud, or mistake."

In response, the Jaman Parties contend: (1) their motion (to compel arbitration "expressly states that the Motion is 'brought under the Federal Arbitration Act ('FAA') 9 U.S.C. §§ 3-4"; (2) "having the Court stay discovery pending the hearing on the Motion to Compel Arbitration" is

different than "enforcing . . . arbitration" and therefore the positions are "not 'totally inconsistent'"; and (3) there was no "'unfair strategy'" to justify the application of the judicial estoppel doctrine.

Though we would review de novo any determination whether the elements of judicial estoppel are met, we are mindful that "[e]ven if the necessary elements of judicial estoppel are satisfied, the trial court still has discretion to not apply the doctrine." (*Owens v. County of Los Angeles*, *supra*, 220 Cal.App.4th at 121.) Additionally, while the Jaman Parties have essentially argued the court should decline to apply judicial estoppel because their successful assertion of the CAA in their second motion to stay did not prejudice Victrola, Victrola has not yet been afforded an opportunity to argue that prejudice exists. We therefore remand for the trial court to determine whether the elements of judicial estoppel are satisfied and if so, whether to exercise its discretion to apply the doctrine.

## DISPOSITION

The court's order denying the Jaman Parties' motion to compel arbitration is vacated.  On remand, the court is to determine whether the Jaman Parties should be estopped from asserting that the FAA's procedural provisions should govern their motion to compel arbitration and, if so, whether to exercise its discretion to apply the doctrine.  The parties are to bear their own costs.

**CERTIFIED FOR PUBLICATION**

MANELLA, P. J.

We concur:

COLLINS, J.

CURREY, J.